**2014-1207**
**(Serial No. 09/527,507)**

# United States Court of Appeals
# for the Federal Circuit

## IN RE: ANDREW IAN DOUGLASS

---

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD.

---

## BRIEF OF APPELLANT ANDREW IAN DOUGLASS

---

John T. Harding
MORRISON MAHONEY LLP
250 Summer Street
Boston, Massachusetts 02210
Telephone: (617) 439-7558
Facsimile: (617) 342-4888
jharding@morrisonmahoney.com

Joseph B. Milstein, Ph.D., PE
MILSTEIN ZHANG & WU LLC
2000 Commonwealth Avenue, Suite 400
Newton, Massachusetts 02466
Telephone: (617) 699-9909
joseph.milstein@mzwiplaw.com

# CERTIFICATE OF INTEREST

Counsel for the Appellant Andrew Ian Douglass certifies the following:

1. The full name of every party or amicus represented by me is:

    Andrew Ian Douglass

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:



3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    Morrison Mahoney LLP – John T. Harding
    Milstein Zhang & Wu LLC / Hiscock & Barclay LLP / Marjama & Bilinski LLP – Joseph B. Milstein
    Perkins, Smith & Cohen, LLP – Stephen Y. Chow, Christine M. Kuta, Jerry Cohen, Edwin H. Paul, Harvey Kaye, Jacob N. Erlich, Chester A. Bisbee, Lei Fang, John Hamilton


|  |  |
|---|---|
| __May 30, 2014__ | _/s/ John T. Harding_ |
| Date | Signature of counsel |
|  |  |
|  | John T. Harding |
|  | Printed name of counsel |

cc:  Nathan K. Kelley, Esq.
     Jeremiah S. Helm, Esq.
     Attorney Jamie L. Simpson

# TABLE OF CONTENTS

Table of Authorities .................................................................................. iii

Statement of Related Cases ....................................................................... 1

Jurisdictional Statement ............................................................................ 2

Statement of the Issues ............................................................................. 3

Statement of the Case ............................................................................... 5

    A.    Procedural History ....................................................................... 5

    B.    The Patent Application and Invention ........................................... 6

    C.    The PTO Office Actions ............................................................. 10

    D.    The Prior Art References ............................................................. 12

        1.    Intuit ............................................................................... 13

        2.    Walker ............................................................................ 14

        3.    Cullen ............................................................................. 15

        4.    Peterson .......................................................................... 16

        5.    Greco .............................................................................. 16

    E.    Mr. Douglass' Rebuttal Evidence ............................................... 17

    F.    Mr. Douglass' Proof of Possession ............................................. 20

    G.    The Examiner's Other Procedural Objections
        Were Withdrawn ......................................................................... 21

    H.    Appeal to the PTAB .................................................................... 22

    I.    The PTAB Decision ..................................................................... 24

Summary of the Argument .......................................................................... 25

Argument.........................................................................................................28

I.    THE STANDARD OF REVIEW.................................................28

    A.    Standard of Review for Rejection of an
         Invention as Obvious (35 U.S.C. § 103)...................................28

    B.    Standard of Review for Rejection of Invention
         as Failing to Satisfy Written Description
         Requirement (35 U.S.C. § 112, ¶ 1)..........................................29

II.    THE PTAB ERRED IN AFFIRMING
    THE EXAMINER'S REJECTION OF THE
    CLAIMS AS OBVIOUS ........................................................29

    A.    The Examiner Failed to Establish that the
         Claimed Invention Is Obvious ...................................................30

    B.    The Other "Prior Art" References Do Not
         Support a Finding of Unpatentability .........................................34

    C.    The Examiner and the PTAB Failed to
         Consider Mr. Douglass' Rebuttal Evidence .............................34

III.    THE PTAB ERRED IN AFFIRMING
    THE EXAMINER'S REJECTION OF
    CLAIMS 19-38 AS FAILING TO SATISFY
    THE WRITTEN DESCRIPTION
    REQUIREMENT (35 U.S.C. § 112, ¶ 1)............................42

Conclusion and Statement of Relief Sought ............................................57

Addendum ................................................................................................58

    PTAB Final Decision................................................................ A-1

Certificate of Service

Certificate of Compliance

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) ....................................................................43

*Hyatt v. Dudas*, 492 F.3d 1365 (Fed. Cir. 2007) ........................................36

*In re Alton*, 76 F.3d 1168 (Fed. Cir. 1996) ...............................29, 30, 45

*In re Chilowsky*, 229 F.2d 457 (C.C.P.A. 1956 ...........................................45

*In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000) .........................................28

*In re Gosteli*, 872 F.2d 1008 (Fed. Cir. 1989) ............................................44

*In re Howarth*, 654 F.2d 103 (C.C.P.A. 1981) ...........................................45

*In re Klein*, 647 F.3d 1343 (Fed. Cir. 2011) ..............................................28

*In re Morris*, 127 F.3d 1048 (Fed. Cir. 1997) ............................................46

*In re Morsa*, 713 F.3d 104 (Fed. Cir. 2013) ..............................................28

*In re Oetiker*, 977 F.2d 1443 (Fed. Cir. 1992) ...........................................30

*In re Piasecki*, 745 F.2d 1468 (Fed. Cir. 1984) ....................................36, 41

*In re Wertheim*, 541 F.2d 257 (C.C.P.A. 1976) ..........................................46

*Lockwood v. American Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) ..............................................................44

*Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998) ................................. *passim*

*Pozen Inc. v. Par Pharmaceuticals, Inc.*,
    696 F.3d 1151 (Fed. Cir. 2012) ........................................................29, 43

*Purdue Pharmaceuticals, L.P. v. Faulding Inc.*,
    230 F.3d 1336 (Fed. Cir. 2005) ..............................................................45

*Regents of the Univ. of Cal. v. Eli Lilly,*
    119 F.3d 1559 (Fed. Cir. 1997),
    *cert. denied*, 523 U.S. 1089 (1998) ............................................................44

*Takeda Pharmaceutical Co. Ltd. v.*
    *Zydus Pharmaceuticals USA, Inc.*,
    No. 2013-1406, ___ F.3d ___,
    2014 WL 642714 (Fed. Cir. Feb. 20, 2014) ...............................................29

*Vas-Cath, Inc. v. Mahurkar*, 935 F. 2d 1555 (Fed. Cir. 1991) ...............................43


Statutes

28 U.S.C. § 1295 (2012) ....................................................................................2

35 U.S.C. § 2 (2012) .........................................................................................2

35 U.S.C. § 6 (Pre-AIA) ....................................................................................2

35 U.S.C. § 102 (Pre-AIA) ...............................................................................31

35 U.S.C. § 103 (Pre-AIA) ......................................................................... *passim*

35 U.S.C. § 112 (Pre-AIA) ......................................................................... *passim*

35 U.S.C. § 132 (2012) .............................................................11, 21, 22, 46

35 U.S.C. § 154 (Pre-AIA) .................................................................................6


Regulations

37 C.F.R. § 1.131 ..................................................................................3, 30, 31

37 C.F.R. § 1.702 ..............................................................................................6

37 C.F.R. § 1.703 ..............................................................................................6

37 C.F.R. § 1.704 ..............................................................................................6

1475066v1

<u>Other Authorities</u>

Manual of Patent Examining Procedure § 608 ........................................................50

Manual of Patent Examining Procedure § 716.01 ..................................................36

Manual of Patent Examining Procedure § 1207.07 ................................................23

Manual of Patent Examining Procedure § 2141.02 ..........................................17, 20

Manual of Patent Examining Procedure § 2145 ....................................................36

Manual of Patent Examining Procedure § 2163 ....................................................46

Manual of Patent Examining Procedure § 2163.02 ................................................44

## STATEMENT OF RELATED CASES

There are no related cases. In particular, no other appeal in or from the same proceeding at the United States Patent and Trademark Office or the Patent Trial and Appeal Board was previously before this Court or any other appellate court, and there is no case known to counsel to be pending in this Court or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

1475066v1

# JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1295(a)(4)(A).  Appellant Andrew Ian Douglass ("Mr. Douglass") appeals from the Final Decision of the Patent Trial and Appeal Board (the "PTAB") mailed on May 10, 2013 (the "PTAB Decision")[A. 1-18][1].  The PTAB Decision affirmed the Examiner's final denial of a patent for the invention specified in Claims 19-40 of U.S. Patent Application No. 09/527,507 ("System and Process for Virtual Management of Risk of Injury to Property or Casualty"); the Examiner's rejection of Claims 19-38 under 35 U.S.C. § 112, first paragraph; and the Examiner's rejection of Claims 19-40 under 35 U.S.C. § 103(a).

The United States Patent and Trademark Office had jurisdiction over U.S. Patent Application No. 09/527,507 filed by Mr. Douglass on March 16, 2000 (the "Patent Application") pursuant to 35 U.S.C. § 2.  The Patent Trial and Appeal Board had jurisdiction over Mr. Douglass' appeal of the Examiner's denial of a patent for the invention specified in Claims 19-40 of the Patent Application pursuant to 35 U.S.C. § 6.  Pursuant to the Memorandum and Order issued by the United States Patent and Trademark Office on October 30, 2013 [A. 914-915], Mr. Douglass timely commenced this appeal by filing a Notice of Appeal on November 21, 2013.

---

[1] All references [A.    ] are to the Joint Appendix.

1475066v1

## <u>STATEMENT OF THE ISSUES</u>

Mr. Douglass presents the following issues for review:

1.     Did the PTAB err in affirming the Examiner's rejection of the Patent Application on the grounds of obviousness under 35 U.S.C. § 103(a) because:

(a)     the PTAB and the Examiner failed to carry their burden of proof of unpatentability as the prior art relied upon did not establish that the invention claimed by Mr. Douglass was obvious;

(b)     the PTAB and the Examiner completely failed to consider the rebuttal evidence submitted by Mr. Douglass that refuted the conclusions reached by the Examiner based on the prior art in violation of the express requirements of the Manual of Patent Examining Procedure; and

(c)     the PTAB and the Examiner refused to remove a cited reference as being antedated by proof of possession of the invention presented by Mr. Douglass under 37 C.F.R. § 1.131?

2.     Did the PTAB err in affirming the Examiner's rejection of Claims 19-38 of the Patent Application under 35 U.S.C. § 112, first paragraph, notwithstanding the fact that the Examiner took an inconsistent position by expressly conceding that Claims 39 and 40 of the Patent Application are supported by an adequate written description in the Specification?

Mr. Douglass respectfully suggests that each of the above questions should be answered in the affirmative. The PTAB's Final Decision should be reversed with directions that a Patent based on the Patent Application be granted and that the maximum allowable Patent Term Adjustment be made as a consequence of delays attributable to the PTO.

1475066v1

# STATEMENT OF THE CASE

## A.    Procedural History

This is an appeal from a final Decision on Appeal of the PTAB mailed on May 10, 2013 (the "PTAB Decision") [A. 1-18]. The PTAB Decision affirmed the rejection of Claims 19-40 for an invention for a "System and Process for Virtual Management of Risk of Injury to Property or Casualty" as more particularly described in U.S. Patent Application No. 09/527,507 (the "Patent Application"). The Patent Application was filed by Appellant Andrew Ian Douglass ("Mr. Douglass") *more than fourteen (14) years ago* on March 16, 2000. [A. 23-47]. The PTAB Decision affirmed the final rejection of Claims 19-40 of the Patent Application as unpatentable under 35 U.S.C. § 103(a) on grounds of obviousness over various cited prior art combinations. [A. 4-5, 16-17]. The PTAB Decision also affirmed the final rejection of Claims 19-38 of the Patent Application based on the purported failure to comply with the written description requirement contained in 35 U.S.C. § 112, first paragraph. [A. 4, 16-17].

The PTAB Decision followed the final rejection of the Patent Application by the United States Patent and Trademark Office (the "PTO") in a Final Office Action mailed on October 18, 2007. [A. 698-729]. No amendments to the Patent Application were filed after the issuance of the Final Office Action. [A. 19-22]. A Notice of Appeal was timely filed on December 18, 2007, and the appeal was

assigned Appeal No. 2010-002514. [A. 730]. Briefing was completed in 2009, but

the PTAB Decision was not mailed until more than four years later on May 10,

2013. [A. 1]. No request for rehearing or reconsideration was submitted to the

PTAB. [A. 19-22]. A Notice of Appeal of the PTAB Decision was timely filed on

November 21, 2013.[2]

### B.    The Patent Application and Invention

Mr. Douglass filed the Patent Application more than fourteen (14) years ago

on March 16, 2000.[3]    [A. 23-47].    The invention described in the Patent

Application "relates to a system and process for managing risk of injury to

---

[2] Mr. Douglass holds both a J.D. and an MBA from Stanford University and is a member of the bars of Massachusetts, New York, Illinois and the Supreme Court. Mr. Douglass is a former general counsel of a large property and casualty insurance company. As demonstrated herein, the Examiner and the PTAB erred in their factual and legal determinations. Given the nature of the Patent Application and Mr. Douglass' diligence in prosecuting the application, the fact that it took the PTO some 14 years to reach a final decision in the matter is unconscionable. Such delays by the PTO are grounds for a Patent Term Adjustment pursuant to 35 U.S.C. § 154(b) and 37 C.F.R. §§ 1.702-1.704. Moreover, the PTO's inordinate delay has deprived Mr. Douglass of an opportunity to use the process described in the Patent Application in a commercial setting.

[3] Over the course of the prosecution, the Patent Application was amended to respond to various objections raised by the Examiner. [A. 62-75, 111-120, 234-255, 352-371, 412-439, 676-697]. Claims 1-18 were canceled without prejudice and Claims 19-38 were added to the Patent Application on June 22, 2005. [A. 234-255]. Claims 39 and 40 were added to the Application following a request submitted by Mr. Douglass on July 3, 2007 in an Amendment and Response. [A. 676-697]. Rebuttal evidence and a Declaration attesting to the date on which Mr. Douglass was in possession of the Invention were submitted on May 3, 2006 and January 10, 2007, respectively. [A. 440-445, 647-659].

property or casualty in the general field of casualty insurance" (the "Invention"). [A. 27]. The Invention describes a process or system by which an **_actual and complete policy of insurance_** is obtained from an insurance company in a single session conducted over the Internet in real-time. [A. 30-31, 40, 42, 677-682]. The insurance policy is effective when the Internet session concludes. [A. 31, 40, 677, 679, 681-682].

Contrary to the erroneous interpretation placed upon the Invention by the Examiner and the PTAB, the Invention is **_not_** a system for obtaining insurance quotes from intermediaries such as a broker or agent which may (or may not) result in the issuance of an insurance policy by an insurance company at some indefinite time in the future. The Invention is also **_not_** a system for issuing a preliminary binder under which the policy will not become effective until the end of the next business day (or several days later). Instead, the process set forth in the Invention **_is a real-time transaction in which the risk of loss is actually transferred and a contract of insurance is created, issued and delivered_**. [A. 30, 31, 40, 42, 677-682]. Unlike all of the prior art references that were relied upon by the Examiner and the PTAB (primarily marketing materials issued by Intuit), at the conclusion of the interaction described in the Patent Application there is nothing more to be done. The parties have created a final, complete and fully executed contract of

7

insurance in exchange for consideration in the form of a payment such as by credit card.

Claim 39 is representative of the Invention. Claim 39 describes a process by which an insurance company provides an insurance service or product to an insured in a single communication session conducted in real-time by means of the Internet. [A. 681]. Claim 39 expressly states that the Invention is one which results in the issuance and delivery of an actual insurance policy that immediately transfers the risk of loss from the purchaser to the insurance company. As Claim 39 recites, the conclusion of the session results in "transmitting from said portal a communication *comprising a policy of insurance*." [A. 681 (emphasis added)]. The process is specifically disclosed with respect to the systems and methods of the Invention at page 5, line 5, through page 6, line 26, and in Figures 1-4 of the Patent Application. [A. 30-31, 40-43]. Figure 1 (which was included in the original application) specifically shows the issuance and delivery of an insurance policy at the conclusion of the session. [A. 40].

The process described in Claim 39 includes the following steps:

(a)     providing a computer-mediated electronic communication portal configured to perform at least one of receiving information from a client and transmitting information to a client;

8

(b)  receiving a communication at said portal of at least one of information that identifies an insurance service required by said client and an identifier suitable for making a payment for the account of said client;

(c)  communicating from said portal with at least one of an underwriting center and a financial institution having a relationship with said client;

(d)  determining whether to provide said insurance service required by said client, based at least in part on said communication with said at least one of an underwriting center and a financial institution having relationship with said client; and

(e)  upon a determination in step (d) to provide said insurance service, transmitting from said portal *a communication comprising a policy of insurance* required by said client (emphasis added);

wherein steps (b) through (e) occur during a single communication session in real time. [A. 681].

Similarly, Claim 40 describes a process by which an insurance company sells insurance to an insured in a single communication session conducted by means of the Internet. [A. 681-682]. Claim 40 is analogous to Claim 39, stated

9

from the perspective of the insurance company that is selling the policy of insurance. Claim 40 explicitly identifies "an insurance issuing entity" as "transmitting from said portal a communication indicating that said insurance service required by said client will be provided, ***said communication comprising a policy of insurance***." [A. 682 (emphasis added)]. Claims 39 and 40 clearly set forth a process by which an actual and complete policy of insurance is issued over the Internet in a single session in real-time.[4]

### C.   The PTO Office Actions

The PTO rejected the Patent Application in a series of Office Actions that spanned the period from February 10, 2006 through October 18, 2007 [A. 372-411, 446-485, 662-675, 698-729]. Each of the Office Actions relied upon substantially similar grounds for rejecting the Patent Application. [A. 376-391, 450-459, 666-671, 701-707]. The Examiner cited certain alleged deficiencies in the written descriptions of the specifications and limitations of the Invention. [A. 374-376, 448-450, 664-665, 700-701].

The Examiner's actions are internally inconsistent. The Examiner took the position that Claims 19 and 29 were inadequately described and yet did not contest

---

[4] Claims 39 and 40 restate the substance of Claims 19 and 29 using slightly different language that describes the same process. To the extent that the Examiner incorrectly concluded that the specifications contained in Claims 19 and 29 were inadequate, the Examiner conceded the adequacy of the descriptions contained in Claims 39 and 40. [A. 700-701]. Figure 1 shows the actual issuance of a policy and was included from the outset in Claims 19 and 29. [A. 40].

10

the adequacy of the description contained in Claims 39 and 40. [A. 700-701]. The Examiner objected to amendments to Claims 19 and 29 under 35 U.S.C. § 132 as allegedly introducing new subject matter ("with coverage commencing at the time of communication") but later rescinded the objection. [A. 626-628, 664]. Despite having rescinded objection to the alleged "new matter" under 35 U.S.C. § 132, the Examiner persisted in issuing additional rejections based on the phrase "with coverage commencing at the time of communication" being new matter when she already had conceded that this was not new matter. [A. 664-665, 700-701]. In making these additional objections, the Examiner relied upon 35 U.S.C. § 112, first paragraph, which relates to the adequacy of the Specification and does not address new matter. [A. 664-665, 700-701].

The Examiner rejected Claims 19-40 as being unpatentable on grounds of obviousness over prior art, including combinations thereof. The primary prior art cited by the Examiner consisted of marketing or sales materials (not patents) for Intuit Insurance Services ("Intuit"). These materials published on the Internet included InsureMarket by Quicken (Dec. 12, 1998-Jan. 27, 1999)("InsureMarket")[5] and/or an article in *Business Wire* about QuickenInsurance (formerly known as

---

[5] The last page of the InsureMarket material provided by the Examiner with the February 2006 Office Action bears a date of January 1, 1997 in the URL in the bottom margin, but it is not referenced in any way in the text of the February 2006 Office Action. [*See* A. 403]. The material refers to "EasyQuote Term Life" ("EasyQuote") and states that the consumer "remain[s] anonymous" when securing quotes. [*Id.*].

11

InsureMarket) entitled "QuickenInsurance Makes Comparison and Choices Easier with New Quotes Summary Redesign" (Oct. 29, 1999)[6]("QuickenInsurance").[7] [A. 395-411]. The Examiner also cited certain patents, including Walker (6,113,493 and 6,119,093)("Walker"), Cullen (6,272,528)("Cullen"), Peterson (6,343,271)("Peterson") and/ or Greco (5,809,478)("Greco") to conclude that Claims 19-40 were obvious and unpatentable over InsureMarket and/or QuickenInsurance. [A. 376-391, 395]. While not identical in all respects, a comparison of the various Office Actions shows the Examiner essentially relied upon the same combinations of prior art in rejecting the Patent Application on grounds of obviousness. [A. 376-391, 450-459, 666-671, 701-707]. These conclusions were embodied in the Final Office Action [A. 698-729] and affirmed by the PTAB Decision. [A. 1-18].

### D.   The Prior Art References

The Examiner and the PTAB relied upon the following prior art references, none of which teaches a system for the issuance and delivery of an actual insurance policy by an insurance company in a single session conducted in real-time over the Internet.

---

[6] The Examiner incorrectly gave the date of the *Business Wire* article as Dec. 29, 1999. The PTAB noted the correct date. [A. 4].

[7] For ease of reference, the company providing services pursuant to InsureMarket, QuickenInsurance and EasyQuote is referred to herein as "Intuit."

1.  **Intuit**

The Examiner relied upon a number of marketing or sales publications for Intuit that were obtained from the Internet. [A. 376-411]. None of the Intuit materials describe a patented process. Certain of the Intuit materials do not even meet the threshold requirement for being considered as prior art as their publication date is not more than one year before the date of the Patent Application. The Intuit materials do not contain information relating to a system for obtaining an actual insurance policy from an insurance company that is effective at the conclusion of the session.

For example, the InsureMarket material cited by the Examiner indicates that the service provider is *a licensed insurance agent, rather than an insurance company*. [A. 397]. Nevertheless, the Examiner read InsureMarket as disclosing "a process by which a user is able to obtain insurances *from insurance companies*." [A. 377 (emphasis added)]. Because InsureMarket does not explicitly recite that the transaction is accomplished through a single communication session, the Examiner relied upon QuickenInsurance for the proposition that "'with a single click' and 'instantly' consumers can receive *up to seven quote-estimates from different carriers* with the option to purchase from the

1475066v1

carriers online."[8]   [A. 378 (emphasis added)].   The QuickenInsurance references

indicate that Intuit authorized representatives are licensed as ***insurance agents*** to

comply with sales and solicitation requirements in various jurisdictions.   [A. 410].

The QuickenInsurance references do not describe a system by which a purchaser of

insurance directly interacts with an insurance company and a policy is delivered at

the conclusion of a single session.   Indeed, the Intuit materials allow for the

consumer to remain "anonymous," clearly teaching away from the concept that the

Intuit materials contemplate the delivery of an actual insurance policy.   Certainly

no insurer can issue a policy to an "anonymous" insured.

### 2.   <u>Walker</u>

In rejecting Claims 22, 24-25, 36 and 38, the Examiner relied on Walker

[A. 702-703, 706-707].   According to the Examiner, Walker discloses a method for

"facilitating the sale of an insurance policy, wherein the user communicates via a

telephone" and a method of "receiving from the user a credit card number and

charging the premium amount to the credit card number."   [A. 379, 381].   The

Examiner concluded that the Invention was obvious in view of Walker.   [A. 379,

381-382, 390-391].   Nowhere does Walker describe a process by which an actual

---

[8] QuickenInsurance actually states that consumers have "the option to purchase ***from some carriers online***."   [A. 408 (emphasis added)].   QuickenInsurance does not state that all carriers allow the consumer to purchase insurance online.

policy of insurance is issued and delivered in a contemporaneous electronic communication. [A. 529-564].

### 3.  Cullen

In rejecting Claims 23 and 29-40, the Examiner relied, in part, on Cullen. [A. 703-707]. The Examiner read Cullen as disclosing "a user requesting an insurance quotation, wherein information is obtained from the user, wherein the information is used to perform calculations so as to generate quotations based on insurer-specific underwriting rules" and "allowing a user to make an insurance claim by means of the Internet." [A. 380, 386]. The Examiner also read Cullen as disclosing a method for "communicating with underwriting services via…insurance company computers, wherein these computers having (sic) insurance agents that are used to gather information on a user, and a user requesting an insurance quotation, wherein information is obtained from the user through an insurance agent, wherein the information is used to perform calculations so as to generate quotations based on insurer-specific underwriting rules." [A. 386 (internal citations omitted)].

The Examiner further read Cullen as teaching a method for delivering financial services, including obtaining insurance quotations and processing applications, renewals and claims, "wherein a sale based on the quotation is negotiated using the system." [A. 392]. The Examiner noted that Cullen fails to

disclose that a communication will be transmitted in the event that a determination is made not to provide the insurance service requested. [A. 388-389]. The Examiner concluded that the Invention was obvious in view of Cullen. [A. 381, 386, 388-391, 704]. Nowhere does Cullen teach a system by which a purchaser of insurance is able to obtain an actual insurance policy (rather than quotations for a policy) that is delivered at the conclusion of the session. [A. 486-504].

### 4. Peterson

In rejecting Claims 26-28 and 33, the Examiner relied, in part, on Peterson. [A. 704-706]. According to the Examiner, Peterson discloses a system for submitting an insurance claim, receiving approval of the claim and receiving payment from a bank. [A. 382-383]. The Examiner concluded that the Invention was obvious in view of Peterson. [A. 383, 389-390]. Peterson does not teach a process for obtaining an insurance policy; its exclusive focus is on submitting claims. [A. 505-528].

### 5. Greco

In rejecting Claim 30, the Examiner, in part, relied on Greco. [A. 705-706]. The Examiner read Greco as disclosing a system or portal for "matching risk data in a case file to a series of risk evaluation profiles to determine the quality of the risk, for classifying the risk correctly, for rendering a decision to accept or reject the policy according to the profile matches, and for sending to a computer the

16

policy record and decision." [A. 388]. The Examiner concluded that the Invention was obvious in view of Greco. [A. 388-389]. Greco does not teach a system by which a final policy of insurance is delivered to the consumer at the conclusion of a single session. [A. 565-581].

### E. Mr. Douglass' Rebuttal Evidence

In response to the Examiner's reliance upon the Intuit references described above, Mr. Douglass submitted rebuttal evidence which refuted the Examiner's conclusions. [A. 440-445]. The rebuttal evidence was never directly mentioned, analyzed or refuted in any of the subsequent Office Actions or in the PTAB's Decision. Instead, in direct violation of the Manual of Patent Examining Procedures (the "MPEP"), Mr. Douglass' rebuttal evidence was completely disregarded by the Examiner and the PTAB. The failure of the Examiner and the PTAB to address the rebuttal evidence presented by Mr. Douglass was in direct contravention of the PTO's well-established procedures. *See* MPEP § 2141.02.

On May 3, 2006, Mr. Douglass submitted an Information Disclosure Statement citing a press release dated February 18, 1998 issued by Intuit Insurance Services, Inc. (the "1998 Intuit Press Release"). [A. 440-445].[9] The 1998 Intuit

---

[9] The Amendment and Response that was filed together with the Information Disclosure Statement also included a number of amendments to obviate a debate with the Examiner regarding the propriety of the originally submitted language. For example, the Amendment and Response spells out the limitation contained in

1475066v1

Press Release states that, as of February 18, 1998, the InsureMarket website "is now providing online insurance purchasing services in Alabama, the first state in the national roll out of the new service." [A. 443]. The 1998 Intuit Press Release describes the alleged "real-time capabilities" of the InsureMarket service, including "enabling coverage to commence *as soon as after midnight of the following business day*." [A. 443 (emphasis added)].[10] The 1998 Intuit Press Release states that Intuit's employees "are licensed insurance agents." [A. 444]. The 1998 Intuit Press Release also states that Intuit "provides links to leading financial service providers so consumers can implement those [financial] decisions more conveniently than ever." [A. 444].

The 1998 Intuit Press Release was issued some two years before the filing date of the Patent Application, yet was disregarded by the Examiner and the PTAB. The 1998 Intuit Press Release does not state that Intuit is an insurance company that can issue policies of insurance or accept the transfer of risk.[11] The 1998 Intuit Press Release makes it clear that the process described does not result

---

Claims 19 and 29 that coverage commences at the time of the communication. [A. 413, 415].

[10] "As soon as after midnight of the following business day" is obviously not the same as the entirely contemporaneous transaction described in the Patent Application.

[11] The 1998 Intuit Press Release states that Intuit Insurance Services, Inc. (IIS) provides the QuickInsurance service and is a wholly-owned subsidiary of Intuit, Inc. (NASDAQ: INT.). This information was highlighted in Mr. Douglass' May 3, 2006 response. [A. 425-428].

in the issuance of an actual insurance policy that is effective to transfer the risk of loss at the conclusion of a single Internet session. Instead, the Intuit materials describe a system by which a consumer can procure an insurance binder (not an actual policy of insurance) from a broker or agent (not an insurance company).

Further, the 1998 Intuit Press Release establishes that even this binder (which is not a complete insurance contract) would not be effective at the time of the termination of the session, but instead would only be effective *as soon as after midnight of the following business day*, which might be the following calendar day (and which might be several days later). The process described in the 1998 Intuit Press Release does not result in the formation and issuance of a final insurance policy in real-time during a single communication session.

These critical distinctions between the Intuit materials and the Invention set forth in Mr. Douglass' Patent Application were never refuted (or even mentioned) in any of the PTO's decisions. None of the later Office Actions or the PTAB Decision mentions this crucial rebuttal evidence. [A. 1-18, 446-485, 662-675, 698-729, 853-888]. The 1998 Intuit Press Release confirms that Intuit never described how one could actually issue and deliver a policy of insurance in real-time. The complete failure of the Examiner and the PTAB to address the contents of the 1998 Intuit Press Release (while continuing to rely upon other statements contained in the later Intuit materials) flatly contravenes the clear procedures set forth in

19

MPEP § 2141.02 (stating that prior art must be considered in its entirety, including disclosures that would teach away from the prior art).

## F.   Mr. Douglass' Proof of Possession

Mr. Douglass also submitted a Response to the August 2006 Office Action which included a Declaration of Prior Invention (the "Declaration") [A. 600-612, 647-659]. The Declaration establishes that Mr. Douglass was in full possession of the Invention at a date prior to October 26, 1999 (the date of the QuickenInsurance reference relied on by the Examiner). [A. 647-659].[12] The Declaration also establishes Mr. Douglass' diligence since conception in reducing the Invention to practice. [A. 647-659]. The Declaration included a copy of a letter from Mr. Douglass dated April 27, 1999 with attachments which included information about the Invention. [A. 603-610, 650-657]. The April 27, 1999 letter included all of the drawings contained in the Patent Application as filed (without identification numerals added in the process of drafting the Patent Application), which drawings reflect the sequence of the process described in the Invention. [A. 651-655]. The Declaration included the text of an engagement letter from a patent attorney to Mr. Douglass dated December 22, 1999 regarding the preparation of a patent application for the Invention. [A. 611-612, 658-659]. Mr. Douglass submitted a

---

[12] As discussed below, the QuickenInsurance reference did not qualify as prior art as it was issued less than one year before the date of the Patent Application.

fully executed copy of the engagement letter dated December 22, 1999 on November 15, 2006. [A. 613-617].

### G.    The Examiner's Other Procedural Objections Were Withdrawn

The Examiner originally objected to Mr. Douglass' proposed amendment of the Patent Application submitted on May 3, 2006. [A. 446-581]. The Examiner cited to 35 U.S.C. § 132 on the basis that the proposed amendment purportedly introduced new subject matter that was not part of the original disclosure. [A. 448-449]. The Office Action stated: "The added material which is not supported by the original disclosure is as follows: The newly added recitation 'with coverage commencing at the time of communication' with claims 19 and 29 appears to constitute new matter." [A. 448]. The purported new matter was stated to also serve as a basis for rejecting dependent Claims 20-29 and dependent Claims 30-38. [A. 449].

The record is clear, however, that this objection was ultimately rescinded. [A. 626-628]. On December 26, 2006, the Examiner issued an Advisory Action which stated: "Continuation of 5. Applicant's reply has overcome the following rejections: 35 U.S.C. 112, second paragraph rejection of Claims 29-38 related to conditional language. Objection under 35 U.S.C. 132 of the specification." [A. 628]. The Advisory Action is a clear admission that the objection under 35 U.S.C. § 132 was rescinded. This rescission was repeated in the Office Action mailed on

21

April 5, 2007. [A. 664]. Nevertheless, the Examiner and the PTAB continued to cite to this objection in later Office Actions and in the PTAB Decision. [A. 6, 665, 700].

Once the Examiner admitted that there was no basis for objection under 35 U.S.C. § 132 and the phrase "with coverage commencing at the time of communication" did not constitute new matter, it was error for the Examiner to reject the same claims as containing "new matter" when they used precisely the same phrase without amendment.

## H.   Appeal to the PTAB

Following the October 2007 Office Action (which simply reiterated the grounds for rejection of the Patent Application stated previously), Mr. Douglass filed a timely Notice of Appeal from the Examiner to the PTAB.[13] [A. 730]. Mr. Douglass filed his Brief with the PTAB on February 15, 2008. [A. 731-788]. Mr. Douglass appealed (1) the rejection of Claim 19 and Claim 29, and their respective dependent claims, under 35 U.S.C. § 112, first paragraph, as containing subject matter that was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor, at the time the Invention was filed, had possession of the claimed Invention, and (2) the rejection of

---

[13] At the time, the PTAB was known as the Board of Patent Appeals and Interferences. For ease of reference, Mr. Douglass refers to the Board of Patent Appeals and Interferences as "PTAB."

Claims 19-40 under 35 U.S.C. § 103(a) as obvious based on InsureMarket and QuickenInsuance and in view of Cullen, Walker, Peterson and Greco. [A. 743-744].

An Answer was filed on behalf of the Examiner on June 4, 2008. [A. 789-812]. Mr. Douglass filed his reply on July 17, 2008 [A. 813-830], with a corrected reply filed on August 1, 2008. [A. 831-849]. The Examiner's Answer stated, for each claim, that the rejection was "for the same reasons given in the previous Office Action (8/16/2006)" without providing any further explanation. [A. 795-801]. The PTAB rejected and returned the Examiner's Answer on January 20, 2009 for failing to comply with the guidelines provided in MPEP § 1207.07 because it referred "either directly or indirectly, to a prior Office [A]ction *without fully restating the point relied upon in the [A]nswer.*" [A. 850-852 (emphasis added)]. The Examiner was also reminded to "reevaluate his or her prior position in light of the arguments presented in the Brief, and should expressly withdraw any rejections not adhered to in the 'Grounds of Rejection Withdrawn' section of the Examiner's Answer." [*Id.*]. The Examiner did not file a replacement Answer until August 3, 2009. [A. 853-888]. Mr. Douglass filed a Reply to the replacement Answer on October 5, 2009. [A. 889-913].

23

## I.    **The PTAB Decision**

On May 10, 2013 (more than 5 ½ years after the appeal was initiated), the PTAB mailed its Decision on Appeal [A. 1-18]. The PTAB affirmed the Examiner's rejection of Claims 19-40 on essentially the same grounds that were stated by the Examiner.    The PTAB affirmed the Examiner's rejection of Claims 19-38 under 35 U.S.C. § 112, first paragraph.  The PTAB found that there was no support, express or implied, in the specification of the Patent Application for the subject matter "receiving by said client by way of said computer-mediated electronic communication network *a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication.*"  [A. 6 (emphasis in original)].  The PTAB rejected Mr. Douglass' argument that a person with ordinary skill in the art would have understood the specification to encompass the claimed subject matter, including the limitation that coverage commences at the time of the communication. [A. 7-8].  The PTAB acknowledged that such a limitation might be obvious to one skilled in the art, but nevertheless required a more specific disclosure in the specification, which the PTAB did not find. [*Id.*].

The PTAB affirmed the Examiner's rejection of Claims 19-40 under 35 U.S.C. § 103(a) as being unpatentable on grounds of obviousness over InsureMarket and QuickenInsurance and in view of Cullen, Walker, Peterson and

Greco. [A. 8-15]. The PTAB apparently did not consider the 1998 Intuit Press Release that Mr. Douglass submitted as rebuttal evidence, as there was no mention of this evidence in the PTAB Decision. [A. 1-18].

## SUMMARY OF THE ARGUMENT

The rejection of the Patent Application is fraught with procedural and substantive errors. The PTAB Decision should be reversed with instructions that a patent for the Invention described in the Patent Application be granted and issued forthwith and that the maximum allowable Patent Term Adjustment be made as a consequence of the extraordinary delays attributable to the PTO.

At the most basic level, the decisions of the Examiner and the PTAB reflect a fundamental misunderstanding of the Invention that is the subject of the Patent Application. In very clear and direct specifications, the Invention describes a process for a person to actually obtain a complete, final and fully executed insurance policy that immediately transfers risk to the issuing company in a single session conducted via the Internet in real time. ***The Invention is fully entitled to be patented***. Because the Examiner and the PTAB misunderstood the Invention, they erroneously rejected it based upon previously disclosed processes or marketing materials which are fundamentally different than the Invention.

The prior art relied upon by the Examiner and the PTAB did not establish their contention that the Invention was not patentable on grounds of obviousness.

None of the prior art that was relied upon discloses a process for obtaining an actual insurance policy (not a quote or binder) that transfers a risk of loss in a single session conducted over the Internet where the policy is effective immediately.

Accordingly, there was no legal grounds or factual basis in the record for the conclusion that the claims set forth in the Patent Application are not patentable over various combinations of purportedly prior art. Certain of the references relied upon do not even qualify as prior art as they were not published more than one year before Mr. Douglass had full possession of the Invention. Contrary to the express mandates of the MPEP, the Examiner and the PTAB completely ignored rebuttal evidence submitted by Mr. Douglass that showed that one of the primary references relied upon did not support rejection of the Patent Application. The Examiner and PTAB also erred in disregarding Mr. Douglass' disclosure that established that he had full possession of the Invention before the date of the publication that was relied upon. *See Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998).

The procedural objections raised by the Examiner and the PTAB are equally invalid. The Examiner erroneously rejected Claims 19-38 on the purported ground that, under 35 U.S.C. § 112, first paragraph, the Patent Application failed to comply with the written description requirement. The PTAB erred in affirming the

26

rejection on that basis.  In particular, the Examiner concluded that the addition of the phrase "with coverage commencing at the time of the communication" to Claims 19 and 29 was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor, at the time the application was filed, had possession of the claimed invention.  The Examiner persisted in this erroneous conclusion even though by an Advisory Action mailed on December 26, 2006 and in the Office Action mailed on April 5, 2007, the Examiner agreed that the amendment submitted by Mr. Douglass cured the alleged deficiency and withdrew the objection to the Patent Application on that basis.  The Examiner and the PTAB persisted in so ruling despite the fact that they did not register any such objection to the description contained in Claims 39 and 40. These positions cannot be reconciled and require reversal of the PTAB Decision to the extent it was based upon these grounds.

At the end of the day, the only conclusion that can be reached is that the PTO took some fourteen (14) years to completely misunderstand the Patent Application and to reject it on grounds that were neither consistent with the law nor supported by the facts.  The Court should reverse the PTAB Decision and direct the PTO to issue a Patent for the Invention forthwith, including the maximum allowable Patent Term Adjustment.

# ARGUMENT

## I.  THE STANDARD OF REVIEW

### A.  Standard of Review for Rejection of an Invention as Obvious (35 U.S.C. § 103)

It is settled that "[o]obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the difference between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of non-obviousness." *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013).   The Court reviews the PTAB's ultimate conclusion of obviousness *de novo* and reviews the underlying factual findings for substantial evidence. *In re Klein*, 647 F.3d 1343, 1347 (Fed. Cir. 2011).  This Court is not bound by any legal conclusion reached that an invention is obvious. *Id.* With respect to the factual findings made by the PTO, "substantial evidence is less than the weight of the evidence but more than a mere scintilla of evidence." *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000).  The standard of review is less deferential than the "arbitrary" and "capricious" standard. *Id.*  In deciding whether there is substantial evidence to support an agency's factual findings, this Court examines the underlying record as a whole, "taking into account evidence that both justifies and detracts from an agency's decision." *Id.* at 1312.

### B. Standard of Review for Rejection of Invention as Failing to Satisfy Written Description Requirement (35 U.S.C. § 112, ¶ 1)

"The question of whether a patent specification contains sufficient written description is a question of fact" that the Court reviews for clear error. *Takeda Pharmaceutical Co. Ltd. v. Zydus Pharmaceuticals USA, Inc.*, No. 2013-1406, ___ F.3d ___, 2014 WL 642714, at *7 (Fed. Cir. Feb. 20, 2014), citing *Pozen Inc. v. Par Pharmaceuticals, Inc.*, 696 F.3d 1151, 1166 (Fed. Cir. 2012); *In re Alton*, 76 F.3d 1168, 1171-1172 (Fed. Cir. 1996).

## II. THE PTAB ERRED IN AFFIRMING THE EXAMINER'S REJECTION OF THE CLAIMS AS OBVIOUS

The fundamental error committed by the Examiner and affirmed by the PTAB was the conclusion that the Invention was unpatentable on grounds of obviousness. None of the prior art relied upon—singly or in combination—teaches a process for the issuance and delivery of a complete insurance policy directly from an insurer in a single session conducted over the Internet. That was the process claimed by Mr. Douglass and it simply is not addressed in the prior art. Instead, the prior art relied upon by the Examiner and the PTAB relates to processes that *involve securing quotes from brokers, agents or other intermediaries* which may (or may not) result in the issuance of an insurance policy by an insurance company at some indeterminate time.

It is settled law that the examiner has the initial burden of presenting a *prima facie* case of unpatentability. *In re Alton*, 76 F.3d 1168, 1175 (Fed. Cir. 1996), citing *In re Oetiker*, 977 F.2d 1443, 1445 (Fed. Cir. 1992). Only if the examiner carries the burden of presenting a *prima facia* case of unpatentability does "the burden of coming forward with evidence or argument shift to the applicant." *Id.* Following the applicant's submission of evidence rebutting the examiner's *prima facie* showing, "patentability is determined on the totality of the record, by a preponderance of the evidence with due consideration to persuasiveness of argument." *Id.*

Here, the Examiner and the PTAB initially erred by relying upon prior art that did not address the process claimed by Mr. Douglass. The Examiner and the PTAB compounded their error by ignoring the rebuttal evidence submitted by Mr. Douglass which established that there was no basis for them to rely upon one of their major items of prior art. The rebuttal evidence demonstrated that (a) the prior art did not convey what was attributed to it by the Examiner and (b) an important component of the cited prior art should be excluded pursuant to a Declaration submitted under 37 C.F.R. § 1.131.

### A. The Examiner Failed to Establish that the Claimed Invention Is Obvious.

The Examiner failed to present a *prima facie* case for obviousness, as she fundamentally misunderstood the claimed subject matter and gave no patentable

30

weight to a claim limitation. Moreover, the Examiner neglected to consider the entire record before her.

The primary reference relied upon by the Examiner and the PTAB – QuickenInsurance – should not have been considered at all. A description in a printed publication published less than one year prior to the date of the Patent Application may be excluded by oath or affidavit. *See* (pre-AIA) 35 U.S.C. § 102(a); 37 C.F.R. § 1.131. The Patent Application was filed on March 16, 2000. [A. 23-47]. QuickenInsurance was published on October 29, 1999 [A. 408-411], which is less than one year before the date of the Patent Application. Accordingly, there was no basis for the Examiner and the PTAB to rely upon the QuickenInsurance reference. Put simply, QuickenInsurance is not prior art that can negate the patentability of the Invention under 35 U.S.C. § 103(a).

At best, QuickenInsurance is a § 102(a) publication that does not qualify as prior art. 35 U.S.C. § 102(a) (pre-AIA). An invention described in a printed publication is not prior art if the applicant's invention occurred earlier. Mr. Douglass submitted a detailed Declaration pursuant to 37 C.F.R. § 1.131 establishing that he had full possession of the Invention prior to October 29, 1999, the date of the QuickenInsurance publication. [A. 600-612, 647-659]. That evidence meets the standard set forth by the Supreme Court in *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998), as it shows in figures or drawings the

process that is being claimed. It was error for the Examiner and the PTAB to disregard this Declaration and in refusing to remove QuickenInsurance as a prior art reference. *Pfaff,* 525 U.S. at 68 ("...the invention must be ready for patenting. That condition may be satisfied...by proof that...the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention."). *Pfaff* teaches that the making of drawings sufficient to support a patent application renders the subject matter "ready for patenting." Mr. Douglass made this very argument to the PTO, which the Examiner and the PTAB ignored.

Even if QuickenInsurance were to be treated as prior art, it does not establish obviousness. The QuickenInsurance article announces "a new auto insurance quotes summary-page layout that will give consumers visiting the site greater flexibility when searching for the most appropriate and economical policy suited for their needs." [A. 408]. The article states that by completing a questionnaire, "consumers can receive up to seven quote-estimates from different carriers with the option to purchase from some carriers online." [A. 408].

QuickenInsurance fails to disclose how any online purchase is performed, and there is no indication that the "new" layout changes announced in the article modify any of the methods associated with the actual purchase of insurance. Moreover, the web page displaying the new auto insurance quotes summary-page

32

layout is that of a broker (Intuit) and not that of an insurance company. [A. 408]. The article does not indicate that Intuit controls any of the terms of the transaction between a consumer and an insurance entity, nor does it discuss the terms of any transaction. QuickenInsurance only discusses a method for obtaining insurance quotes, not a process by which an actual insurance policy is issued and delivered in a single session.

While InsureMarket predates the Patent Application, it also fails to support a finding of obviousness. InsureMarket does not teach, or even suggest, the "real-time" completion of an insurance transaction in a single communication. [A. 396-403]. To the contrary, InsureMarket teaches that "[f]ollowing the application, [the consumer will] be given payment options for both the initial 'binder' payment, and for subsequent premium payments." [A. 401-402]. A consumer who wants to "learn more about the policy" for which he or she has received a premium quote must select "View/Buy this Policy" before learning the terms of the offered insurance coverage. [A. 401].

Although not discussed by the Examiner in the February 2006 Office Action (or otherwise), Easy Quote predates the Patent Application but does not teach or suggest anything about when and how an insurance policy is issued. [A. 403]. Moreover, to the extent that the consumer "remain[s] anonymous" when obtaining a quote, EasyQuote fails to address one of the key terms of an insurance contract:

the identity of the policyholder. Accordingly, EasyQuote does not support a finding that the Invention was obvious.

### B. The Other "Prior Art" References Do Not Support a Finding of Unpatentability

The attempt by the Examiner to bolster her case by citing to other prior art (Walker, Peterson, Cullen and Greco) in "combination" with the QuickenInsurance and InsureMarket references in fact added nothing of relevance to the analysis. As summarized above, none of the processes described in these patents describe a system by which an actual policy of insurance is issued and delivered in real time via a single Internet session. [A. 486-581]. Rather, they relate to processes for obtaining quotes from intermediaries such as brokers or agents. [*See* A. 386, 486-581]. Neither the Examiner nor the PTAB ever explained how combining these references with the Intuit materials support a finding that the Invention claimed by Mr. Douglass was obvious.

### C. The Examiner and the PTAB Failed to Consider Mr. Douglass' Rebuttal Evidence

The Examiner and the PTAB compounded their erroneous reliance upon the Intuit references by failing to consider the additional Intuit material submitted by Mr. Douglass. The Examiner and the PTAB had an obligation to consider the additional material as part of the totality of the Intuit prior art, yet inexplicably failed to do so. The 1998 Intuit Press Release pre-dates the materials relied upon

by the Examiner and the PTAB. This rebuttal material demonstrated that the Intuit process did not contemplate a real-time transaction by which an insurance policy would be issued at the conclusion of a single session. [A. 442-444]. Incredibly, none of the Office Actions or the PTAB Decision mention this evidence at all—it is as though it was never presented even though Mr. Douglass directed the Examiner and the PTAB to the 1998 Intuit Press Release on numerous occasions. [A. 1-18, 446-485, 662-675, 698-729, 853-888].

In response to the Examiner's initial conclusion that the Invention was obvious based on InsureMarket and QuickenInsurance, Mr. Douglass submitted the 1998 Intuit Press Release that elucidated what these references taught. [A. 442-444]. Both the Examiner and the PTAB failed to consider the 1998 Intuit Press Release, as demonstrated by the contents of the Office Actions and the PTAB Decision. The PTAB Decision is utterly devoid of any reference to the 1998 Intuit Press Release. It was reversible error for the Examiner and the PTAB to summarily dismiss or fail to consider the rebuttal evidence submitted by Mr. Douglass with no explanation as to why the evidence does not show that their conclusion of obviousness was erroneous.

35

The Examiner and the PTAB wholly ignored the PTO's own procedures. The MPEP[14] instructs that "[w]hen an applicant timely submits evidence traversing a rejection, the examiner must reconsider the patentability of the claimed invention." MPEP § 716.01(d); *see also* MPEP § 2145. As this Court has explained:

> When prima facie obviousness is established and evidence is submitted in rebuttal, ***the decision-maker must start over***.... An earlier decision should not, as it was here, be considered as set in concrete, and applicant's rebuttal evidence then be evaluated only on its knockdown ability. Analytical fixation on an earlier decision can tend to provide that decision with an undeservedly broadened umbrella effect. Prima facie obviousness is a legal conclusion, not a fact. ***Facts established by rebuttal evidence must be evaluated along with the facts on which the earlier conclusion was reached, not against the conclusion itself***....

*In re Piasecki*, 745 F.2d 1468, 1472-1473 (Fed. Cir. 1984)(emphasis added).

Given this legal standard, the actions of the Examiner and the PTAB are unsupportable and must be reversed. There is not a scintilla of evidence in the

---

[14] Although the MPEP technically "does not have the force of law," it is made available to the public and describes procedures upon which the public can rely. *Hyatt v. Dudas*, 492 F.3d 1365, 1369, n.2 (Fed. Cir. 2007). There is no reason for this Court to relieve the PTAB of the standards for considering rebuttal evidence that are clearly set forth in the MPEP. Mr. Douglass' rebuttal evidence was submitted in a timely manner and it directly refuted the Examiner's conclusion that Intuit contemplated the issuance of an insurance policy in real time. Mr. Douglass directed the Examiner and the PTAB to the evidence on several occasions. [A. 412-445, 582-599, 630-646, 676-697, 731-788. 889-913].

36

record to suggest that the Examiner or the PTAB considered Mr. Douglass' rebuttal evidence at all. [*See* A. 1-18, 446-485, 662-675]. Neither the Examiner nor the PTAB discussed the contents of the 1998 Intuit Press Release and how the statements contained therein affect the issue of obviousness. Reading the Office Actions and the PTAB Decision, it is as though Mr. Douglass' rebuttal evidence never existed and was never a part of the agency record. This blatant disregard for the PTO's own procedures mandates reversal of the PTAB Decision.

This is particularly so as the 1998 Intuit Press Release makes it clear beyond peradventure that the reliance by the Examiner and the PTAB on InsureMarket and QuickenInsurance was entirely misplaced. *The Intuit references suggest a process for brokering insurance but not for underwriting insurance*. The 1998 Intuit Press Release makes it clear that Intuit is just an agent or intermediary. An insurance agent or broker (sometimes referred to as a producer) serves as an intermediary between the customer and the insurance company to assist with the placement of insurance. A producer in the insurance market serves the same role as a real estate agent in the housing market. The real estate agent acts as a conduit for the purchase and sale of property, but is not a party to the transaction. Similarly, an insurance producer acts as a conduit for the purchase and sale of insurance, but is not a party to any policy issued to the customer by the insurance company. The producer assists with the procurement of insurance but does not

37

underwrite the risk, including assessing the cost or the risk, and does not assume any obligations in the event of a covered claim.

By contrast, the Invention provides for a real-time computer-mediated transaction in which a consumer purchases and an insurer sells insurance, with the express limitation that coverage commences at the time of the communication between the consumer and the insurer. [A. 677, 679]. As set forth in Claim 39, the communication delivered at the conclusion of the session "comprises a policy of insurance." [A. 681]. There is no insurance producer involved in the process described in the Invention and the issuance of an actual policy is immediate.

The Intuit process does not involve an actual insurance transaction between an insurance company and a consumer. Further, to the extent that the Examiner and the PTAB focused a portion of their decisions on the "real-time" nature of the contemplated transactions, the 1998 Intuit Press Release specifically teaches that the Intuit process *does not* provide for a real-time transaction with coverage commencing at the time of the communication. This is a critical distinction between the Intuit process and the Invention that was never acknowledged by the Examiner and the PTAB.

The 1998 Intuit Press Release teaches that Intuit provides for the commencement of coverage *no sooner than midnight of the following business day*. [A. 443 (emphasis added)]. To illustrate the lack of a real-time transaction in

Intuit, consider that the next business day following an application for insurance coverage made on a Friday would not be until after midnight on Monday, or Tuesday when Monday is a holiday. The inception of coverage three or four days after the selection of an insurance product is not a "real-time" transaction. Moreover, the 1998 Intuit Press Release is clear that coverage would be in effect "no sooner than" the stated interval, but does not represent that the coverage would be in effect in all instances at that time—it expressly leaves open the possibility that coverage would not commence until some later time. Thus, QuickenInsurance (to the extent it may be considered) and InsureMarket do not teach that coverage commences at the time of the communication between the consumer and Intuit. This lack of an actual real-time transaction renders the prior art relied upon by the Examiner and the PTAB wholly inadequate to sustain their claim of obviousness. The 1998 Intuit Press Release makes this timing issue clear, yet the reference was ignored by the Examiner and the PTAB.

The QuickenInsurance reference is deficient insofar as it does not teach or suggest the provision of an insurance policy simultaneously with a communication at the time the customer indicates that a policy is desired. In addition, the QuickenInsurance reference does not teach or suggest the issuance of an insurance policy with coverage commencing at the time of the communication. Instead, the QuickenInsurance reference, at best, suggests that a binder may issue, which, as

39

described in the 1998 Intuit Press Release, does no more than *"enable[e] coverage to commence as soon as after midnight of the following business day."* [A. 443 (emphasis added)]. Based on the language of the Intuit references, there is no evidence that Intuit appreciated that the inherent time stamp provided by the Internet (or by an 800 number system) could be useful for identifying a time of commencement of insurance coverage.[15]

The cited art repeatedly teaches instant or live insurance quotes, which merely assist a consumer in deciding whether or not to purchase a service or product. To the extent that the Examiner and the PTAB relied on the combination of EasyQuote, InsureMarket and QuickenInsurance, the 1998 Intuit Press Release refutes the argument that such a combination precludes the patentability of the Invention. However, none of the Examiner's Office Actions discuss the effect of the 1998 Intuit Press Release, even though it teaches that Intuit did not appreciate the possibility of using an inherent time stamp applied by a processing server connected to the Internet as an indication of when a communication took place and thus as an indication of when a policy of insurance could issue and have coverage

---

[15] Certain inherent features of communication made by means of the Internet or by way of 800 number telephone calls cannot inure to the benefit of Intuit. First, there is absolutely no evidence that the "inventors" of the InsureMarket and QuickenInsurance methods and systems conceived of using the Internet for immediate provision of an insurance policy. Second, there is no evidence that they had an expectation such systems or methods would work. Third, there is no evidence that they did any testing for such purposes.

40

commence. InsureMarket and QuickenInsurance do not disclose that an insurance policy commences at the time of the communication between the consumer and Intuit. Moreover, the prior art explicitly states that (at most) only a binder is provided and that coverage commences at a later (and undefined) time following the communication.

Given the irrefutable evidence presented by Mr. Douglass, which evidence clearly establishes that the Examiner's interpretation of what was offered by Intuit at that time was not correct, the Examiner was required either to demonstrate that there was some prior art that anticipates or makes obvious the limitations claimed by Mr. Douglass, or to allow the claims. Instead, the Examiner simply ignored the information that does not support her argument. [A. 698-729]. This was clear error.

In this case, the purported showing by the Examiner of a *prima facie* case of obviousness "took on a life of its own" and "remained 'set in concrete.'" *In re Piasecki*, 745 F.3d 1468, 1473 (Fed. Cir. 1984). Each fact presented in rebuttal, if it was evaluated at all, "was evaluated against the conclusion itself rather than against the facts on which the conclusion was based.... This procedure, and the conclusion of obviousness flowing from this procedure, are thus flawed." *Id.* The Examiner's rejection of Claims 19-40 as obvious and the PTAB's decision to sustain the rejection were not based on substantial evidence and were erroneous,

41

including insofar as they completely failed to address the effect of the 1998 Intuit Press Release submitted by Mr. Douglass. Accordingly, the PTAB Decision should be reversed.

### III. THE PTAB ERRED IN AFFIRMING THE EXAMINER'S REJECTION OF CLAIMS 19-38 AS FAILING TO SATISFY THE WRITTEN DESCRIPTION REQUIREMENT (35 U.S.C. § 112, ¶ 1)

The Examiner and the PTAB also erred in relying upon the written description requirement contained in 35 U.S.C. § 112, first paragraph as a basis for rejecting Claims 19-38 of the Patent Application. In particular, there was no basis in the record for the conclusion that the limitation "with coverage commencing at the time of the communication" in Claims 19 and 29 was not sufficiently described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor, at the time the application was filed, had possession of the claimed invention. The Patent Application clearly showed the actual issuance and delivery of an insurance policy that was effective to transfer risk at the conclusion of the Internet session. That process was disclosed, at a minimum, in the figures that were included in the original specification which fully documented the fact that the Invention included the delivery of a policy. [A. 40 (Fig. 1), 42 (Fig. 3)]. Under settled Supreme Court law, nothing more was required. *Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 68 (1968).

42

The decisions of the Examiner and the PTAB are also unsupportable because they are internally inconsistent. The Examiner and the PTAB concluded that the referenced limitation was not adequately disclosed in Claims 19 and 29. [A. 6-8, 700-701, 710]. At the same time, neither the Examiner nor the PTAB registered any such objection to Claims 39 and 40. [A. 1-18, 698-729]. Yet Claims 39 and 40 restate or are analogous to the same process as Claims 19 and 29 using slightly different wording. Insofar as the Examiner and the PTAB did not contest that the "comprising a policy of insurance" language in Claims 39 and 40 adequately disclosed the time of commencement of coverage, there is no basis to sustain the finding that there was inadequate disclosure of the time that coverage commences in Claims 19 and 29. The positions taken by the Examiner and the PTAB are irreconcilable.

Pursuant to the first paragraph of 35 U.S.C. § 112, the specification of a patent application must contain a written description of the invention to ensure "adequate disclosure of the invention." *Pozen Inc. v. Par Pharmaceuticals, Inc.*, 696 F.3d 1151, 1166 (Fed. Cir. 2012). "A specification adequately describes an invention when it 'reasonably conveys *to those skilled in the art* that the inventor had possession of the claimed subject matter as of the filing date.'" *Id.*, quoting *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010)(emphasis added); *Vas-Cath, Inc. v. Mahurkar*, 935 F. 2d 1555, 1563-1564

43

(Fed. Cir. 1991). This is an objective standard. *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989); *see also* MPEP § 2163.02. Moreover, this standard expressly takes into account the identity of the audience as being "those skilled in the art," which here would be persons who are skilled in the insurance industry and its products.

Possession is demonstrated through a description of the claimed invention with all of its limitations, including through the use of words, figures and diagrams that fully set forth the claimed invention. *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). The invention need not be reduced to practice, but it must be shown to be "ready for patenting" such as by the disclosure of drawings indicating that the invention was complete when the application was filed, or by describing distinguishing and identifying characteristics sufficient to show that the applicant was in possession of the claimed invention. As noted, the Supreme Court has expressly held that figures, drawings or diagrams can in and of themselves be sufficient to satisfy the disclosure requirement. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 68 (1998); *see Regents of the Univ. of Cal. v. Eli Lilly*, 119 F.3d 1559, 1568 (Fed. Cir. 1997), *cert. denied*, 523 U.S. 1089 (1998).

"In order to satisfy the written disclosure requirement, the disclosure as originally filed does not have to provide *in haec verba* support for the claimed subject matter at issue... Nonetheless, the disclosure...must convey with

44

reasonable clarity to those skilled in the art that…[the inventor] was in possession of the invention." *Id.*, citing *Purdue Pharmaceuticals, L.P. v. Faulding Inc.*, 230 F.3d 1336, 1345 (Fed. Cir. 2005)(ellipses and brackets in original). "If a person of ordinary skill in the art would have understood the inventor to have been in possession of the claimed invention at the time of filing, even if nuance of the claims is not explicitly described in the specification, then the adequate written description requirement is met." *In re Alton*, 76 F.3d 1168, 1175 (Fed. Cir. 1996).

An inventor must enable others to practice his invention, but "[a]n inventor need not, however, explain every detail since he is speaking to those skilled in the art. What is conventional knowledge will be read into the disclosure." *In re Howarth*, 654 F.2d 103, 105 (C.C.P.A. 1981). As the Court of Patent Appeals stated:

> It is well settled that the disclosure of an application embraces not only what is expressly set forth in words or drawings, but what would be understood by persons skilled in the art. As was said in *Webster Loom Co. v. Higgins et al.*, 105 U.S. 580, 586 (26 L.Ed. 1177), the applicant "may begin at the point where his invention begins, and describe what he has made that is new and what it replaces of the old. That which is common and well known is as if it were written out in the patent and delineated in the drawings."

*Id.*, quoting *In re Chilowsky*, 229 F.2d 457, 460 (C.C.P.A. 1956).

With respect to a rejection based on the first paragraph of 35 U.S.C. § 112, the examiner must thoroughly review and evaluate the content of the patent

45

application and then present evidence or reasons as to why a person skilled in the art would not recognize that the written description of the invention provides support for the claims. *See* MPEP § 2163; *In re Wertheim*, 541 F.2d 257, 263 (C.C.P.A. 1976).

Insofar as Claims 19-40 were added to the Patent Application by amendment, Mr. Douglass showed support in his original disclosure for such claims. [*See* A. 23-47]. The Examiner rejected Claims 19-38 for failing to satisfy the written description requirement, after admitting that there was no new matter added by amendment (35 U.S.C. § 132), but did not reject Claims 39-40 on the same grounds. [A. 700-701; *see also* A. 5-8]. This inconsistency alone demonstrates the lack of a basis in the record for rejecting the Patent Application.

During examination proceedings, claim language is to be given its broadest reasonable interpretation consistent with the specification and reviewed by the Court for reasonableness. *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997). The Examiner and the PTAB failed to adhere to this directive in several ways. Remarkably, even though Claim 39 and Claim 40 were added by amendment filed July 3, 2007, *after* the reasons given in the previous August 2006 Office Action were recited, the arguments used to reject those claims are stated in terms of arguments made in 2006 against Claim 29 and Claim 31. The Examiner does not appear to have considered in the October 2007 Office Action the fact that Claim 39

and Claim 40 *recite different claim limitations* than Claim 29 and Claim 31. The claim limitations are expressed in different language, with terms that are present in Claim 29 and Claim 31 omitted from Claim 39 and Claim 40, and terms employed in Claim 39 and Claim 40 that do not appear at all in Claim 29 and Claim 31. The Examiner incorrectly considered these limitations to be substantially the same.

Further, in the October 2007 Office Action, the Examiner asserted that the limitation found in element (e) of Claim 29 ("transmitting from said portal a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication") is substantially the same as the limitation found in element (e) of Claim 39 ("transmitting from said portal a communication comprising a policy of insurance required by said client") and the limitation found in element (e) of Claim 40 ("transmitting from said portal a communication indicating that said insurance service required by said client will be provided, said communication comprising a policy of insurance"). This is remarkable in that the Examiner argued that there is no support for the limitation "transmitting from said portal a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication" on the one hand, but then argues that the claim limitation of Claim 39 and Claim 40 are substantially the same limitation, even though neither of Claim 39 or Claim 40 recites explicitly

47

when the policy of insurance commences, but rather that the communication includes a policy of insurance as a component of the communication. The limitation of Claim 29 does not require a policy of insurance (*e.g.*, the text of such a policy), but only that the coverage starts at the time of the communication. Claim 31 adds the actual transmission of the insurance policy document to the limitations of Claim 29.

The Examiner failed to recognize distinctions between claim limitations stated in distinctly different terms. Insurance agents, insurance markets and insurance companies might be compared to real estate agents, real estate markets and companies that own real estate for rent or for lease. When deciding to rent an apartment or office space, a client can contact a real estate agent who, like an insurance agent, is simply an intermediary and does not have any investment in the ownership of the space that the client will rent. The real estate agent gets paid for matching up the renter and the building owner, but has no personal interest in the events that occur after the rental or lease is entered into. The real estate agent does not set the terms and conditions of the rental agreement or lease; rather, the owner and the renter or lessee determine those terms and conditions.

The real estate market is analogous to the insurance market, in that different real estate companies will be offering different apartments or office space at different prices. By analogy to an insurance company, the real estate company that

48

owns a building in which the client will rent an apartment or office space is committing its capital to providing the apartment or office space to the client for the term of the lease, just as an insurance company will commit its capital to protect the client's risks for the term of the policy.

The Examiner failed to deal with the insurance policy element of Claims 39 and 40, which were added to the Patent Application to claim what is explicitly shown in the Patent Application as filed. Specifically, Fig. 1 shows a policy being sent from the insurer to the customer. Fig. 1 has been included in the Patent Application since it was initially filed in March 2000. Both of Claim 39 and Claim 40 recite that a policy of insurance is communicated to the client purchaser as part of the communication session. Claim 40 explicitly recites that the web portal is that of an insurance issuing entity.

It appears that the Examiner was trying to interpret the language of limitation (e) of Claim 29 in two dissimilar ways. There are two possibilities. The first possibility is that there is no support for the recited limitation of Claim 29 as the Examiner has asserted in his argument with regard to the 35 U.S.C. § 112, second paragraph rejection. In this case it is hard to understand how those claim elements of Claim 39 clause (e) and Claim 40 clause (e) that are literally supported (*e.g.*, the provision of an insurance policy as part of a single communication session) can be substantially the same limitation as one that is not supported at all.

49

In this possibility, the Examiner is arguing that the language of clause (e) of Claim 29 has a different meaning or conveys different information than either of Claim 39 clause (e) and Claim 40 clause (e).

The other possibility is that the limitations of clauses (e) of Claims 29, 39 and 40 are substantially the same as the Examiner argued in the 35 U.S.C. § 103(a) rejection. In this possibility, because the Examiner argued that the language of clause (e) of Claim 29 ("transmitting from said portal a communication indicating that said insurance service required by said client will be provided *with coverage commencing at the time of the communication*") has substantially the same meaning or conveys the same information as both of Claim 39 clause (e) and Claim 40 clause (e), and because a claim does not require that the identical language be found in the specification for support, Mr. Douglass asserts that the Examiner conceded that there is support for the limitation in the specification and drawings.

Moreover, the Examiner did not appear to give any weight to the information in Fig. 1 or Fig. 3, which can be combined with the text of the Patent Application as filed. The Examiner simply argued that there is no support for the claim language, even though originally filed drawings may be relied upon as disclosure. *See* MPEP § 608; *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998)(drawings alone can constitute a disclosure).

50

The Examiner makes conclusory arguments. In the October 2007 Office Action, the Examiner states that "[t]he commencement of coverage is a separate step from the purchasing of insurance." [A. 701]. No rationale or support is given for this conclusion. First, when one purchases insurance, whatever the condition on commencement of coverage might be, the time of commencement of coverage is determined as part of the purchasing activity. Every purchaser of insurance will specify when he or she wishes the insurance coverage to commence as part of the purchase of the policy of insurance. No one purchases or sells insurance without having specified a time of commencement of the coverage recited in the policy.

It is a normal action as part of the purchase process to indicate when one wants insurance coverage to commence. For example, one might purchase automobile insurance or life insurance under which one wishes to have immediate coverage. One might wish to change insurance providers, for example to get a better rate, with coverage commencing immediately, and only thereafter cancelling an existing policy already in effect. Alternatively, a person purchasing a home might arrange to buy a homeowner's insurance policy in advance, but with coverage to begin at the time that the purchase of the property closes, because the prospective homeowner bears no risk of loss until the purchase and sale closes and an insurance policy effective before that time would be a waste of money.

51

Second, today there exist web sites, which web sites did not exist when the Patent Application was filed in March 2000, on which one can buy a policy of insurance that gives immediate coverage. In any case, the time of coverage is arranged at the time of purchase as an integral act in the purchase process, indicating that the Examiner's conclusion is unsupported by (and is actually contrary to) the facts. The fact that web sites now exist where one can purchase insurance providing immediate coverage also is rebuttal evidence to the notion of obviousness: if the web site put in evidence by the Examiner knew to make available policies having an immediate effective coverage at the time cited by the Examiner, why did that web site not do so, and why did it not state that it did so in explicit terms, in the time frame identified by the Examiner? Instead, the owner of the web site makes reference to "*enabling coverage to commence as soon as after midnight of the following business day*."

Also, in the October 2007 Office Action, the Examiner states: "Thus, Applicant must provide support for the step of commencement of coverage rather than for the purchasing of insurance, *which Applicant has support for in the originally filed specification*." [A. 701 (emphasis added)]. The Examiner has therefore conceded that there *is* support for the purchasing of a policy of insurance. However, the Examiner made the conclusory assertion that the step of commencement of coverage is different from the step of purchasing insurance.

52

Since the Examiner admitted that there is support in the specification for the step of purchasing insurance (and Fig. 1 shows a policy being sent to the client as part of the communication session), it is unclear how the Examiner can then read a limitation of when coverage might commence into either of Claim 39 or Claim 40 in order to invalidate them as "substantially similar" to Claim 29. Neither Claim 39 nor Claim 40 refers to a time of commencement of coverage, and they simply recite that the policy of insurance is communicated as part of the single communication session. The language of Claim 39 makes clear that the policy is "a policy of insurance required by said client." The language of Claim 40 makes clear that the policy comports with "said insurance service required by said client." In both cases, if the client expects immediate coverage, that is what is "required by said client," and the client will not expect to purchase a policy that does not provide that condition.

The adequacy of the written description in a patent application focuses on what "persons of ordinary skill in the art" at the time the application was filed would be expected to know, including conventional well-known information about the state of the art at the time of the application. For the Patent Application, which was filed on March 16, 2000, it is reasonable to expect that "one of ordinary skill in the art" would be familiar with subject matter that is described in U.S. patents

issued before such filing date, as well as basic factual information about technologies such as the Internet and e-mail. This includes:

- The first ARPANET e-mail that was sent in 1971. Many e-mail systems have been in use since that time (and well before 2000), which include the ability to send and receive text, which can then be printed.

- U.S. Patent No. 5,791,991, issued on August 11, 1998, to Small (hereinafter "the '991 patent"), which describes how the Internet can be used by a consumer to obtain, download, and print product refund and discount information in a single real-time session. Figures 1 and 2 and Claim 1 of the '991 patent show how a person can access a web page using a computer connected to the Internet via a modem, a telephone line, and an Internet Service Provider to obtain coupons that can be printed by the person, all in a single session.

- U.S. Patent No. 5,826,241, issued on October 20, 1998, to Stein et al. (hereinafter "the '241 patent"), which describes how a person can acquire an "information product" over the Internet in return for a payment. The "information product" can be a product that is transferable over the Internet, such as a writing, music, or a pictorial work.

- U.S. Patent No. 5,917,913, issued on June 29, 1999 to Wang (hereinafter "the '913 patent"), which recites in relevant part that "Transactions conducted via computer networks may encompass a wide range of transactions, including exchanging information and data via a computer network popularly known as the Internet, e.g., to make a purchase from a vendor on the network."

Although the Patent Application did not incorporate by reference any of the '991 patent, the '241 patent or the '913 patent, one of ordinary skill in the relevant art would know that an insurance policy comprises text, that text could be transferred over the Internet, and that such transfer in the course of a single communication session involving a purchase of the insurance policy would be logically possible and feasible.

The Patent Application indicates that a single communication session is used to allow a customer to apply for, be qualified for, make payment for and purchase an insurance policy. The insurance policy is described by Figure 1 as being sent from the service center 10, a web site, to the customer 1 as part of the transaction, and the policy is also described as being approved as regards underwriting, meaning it is a valid insurance policy. Accordingly, the Patent Application would convey to one of ordinary skill in the art that Mr. Douglass possessed, at the time the Patent Application was filed, the inventions claimed in Claim 19 and Claim 29.

55

Claim 19 and Claim 29 are, therefore, acceptable under the first paragraph of 35 U.S.C. § 112, and dependent Claims 20-28 and dependent Claims 30-38 are also acceptable because all of the elements required to describe the transaction are present in the text and figures of the Patent Application as filed.

The Examiner did not question that Claim 39 and Claim 40 find literal support in the text and figures of the Patent Application because the text makes clear that the web site is that of a mutual insurance company ("a vendor of an insurance service" as recited in Claim 39 and "an insurance issuing entity" as recited in Claim 40), and the text and figures explicitly describe that an insurance policy is purchased and delivered ("transmitting from said portal a communication comprising a policy of insurance required by said client" as recited in clause (e) of Claim 39, and "transmitting from said portal a communication indicating that said insurance service required by said client will be provided, said communication comprising a policy of insurance" as recited in clause (e) of Claim 40) as part of the single communication session.

The inconsistent position taken by the Examiner, and affirmed by the PTAB, with respect to Mr. Douglass' satisfaction of the written description requirement for Claims 19-38 was clearly erroneous. Accordingly, the PTAB Decision should be reversed and a Patent should issue for the Invention.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Mr. Douglass respectfully requests that the Court reverse the Final Decision of the PTAB and issue a Judgment declaring and ordering that he is entitled to the grant of a Patent for the Invention, as more specifically described in Claims 19-40 of the Patent Application, together with the maximum allowable Patent Term Adjustment based upon the PTO's inordinate delays.

Respectfully submitted,
**ANDREW IAN DOUGLASS**
By his attorneys,

/s/ John T. Harding

_____
John T. Harding
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA  02210
Telephone: (617) 439-7558
Facsimile: (617) 342-4888
jharding@morrisonmahoney.com

/s/ Joseph B. Milstein

_____
Joseph B. Milstein, Ph.D., PE
MILSTEIN ZHANG & WU LLC
2000 Commonwealth Ave., Suite 400
Newton, MA 02466
Telephone: (617) 699-9909
joseph.milstein@mzwiplaw.com

Dated:  May 30, 2014

# **ADDENDUM**

# TABLE OF CONTENTS

**Judgment and Order Appealed From:**

Decision from Patent Trial and Appeal Board....................................................... A-1

1475066v1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/527,507 | 03/16/2000 | Andrew Ian Douglas | AID-0001 | 2191 |

88993          7590          05/10/2013

Milstein Zhang & Wu LLC
2000 Commonwealth Avenue, Suite 400
Newton, MA 02466-2004

| EXAMINER |
|---|
| RINES, ROBERT D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3623 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/10/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte* ANDREW IAN DOUGLAS

_____

Appeal 2010-002514
Application 09/527,507
Technology Center 3600

_____

Before MURRIEL E. CRAWFORD, HUBERT C. LORIN, and
JOSEPH A. FISCHETTI, *Administrative Patent Judges*.

LORIN, *Administrative Patent Judge*.

DECISION ON APPEAL

STATEMENT OF THE CASE

Andrew Ian Douglas (Appellant) seeks our review under 35 U.S.C.

§ 134 of the final rejection of claims 19-40. We have jurisdiction under 35

U.S.C. § 6(b) (2002).

Appeal 2010-002514
Application 09/527,507

SUMMARY OF DECISION

We AFFIRM.[1]

THE INVENTION

The invention relates to "a system and process for managing risk of injury to property or casualty in the general field of casualty insurance." Specification 2-4.

Claim 19, reproduced below, is illustrative of the subject matter on appeal.

> 19.    A process by which a client obtains an insurance service from a vendor, comprising the steps of
>
> (a) communicating from a client by way of a computer-mediated electronic communication network at least one of information that identifies an insurance service required by said client and an identifier suitable for making a payment for the account of said client; and
>
> (b) receiving by said client by way of said computer-mediated electronic communication network a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication;
>
> wherein steps (a) and (b) occur during a single communication session in real time.

---

[1] Our decision will make reference to the Appellant's Appeal Brief ("App. Br.," filed Feb. 15, 2008) and Reply Brief ("Reply Br.," filed Oct. 5, 2009), and the Examiner's Answer ("Ans.," mailed Aug. 3, 2009).

2

Appeal 2010-002514
Application 09/527,507

THE REJECTIONS

The Examiner relies upon the following as evidence of

unpatentability:

| | | |
|---|---|---|
| Greco | US 5,809,478 | Sep. 15, 1998 |
| Walker | US 6,119,093 | Sep. 12, 2000 |
| Cullen | US 6,272,528 B1 | Aug. 7, 2001 |
| Peterson | US 6,343,271 B1 | Jan. 29, 2002 |

Quicken, www.insuremarket.com, accessed at www.archive.org, Dec. 12, 1998 - Jan. 27, 1999 (http://web. Archive.org/web/19981212025934/http://www.insuremarket.com/, accessed June 22, 2004]. ("Insuremarket")]

Business Editors & Insurance Writers,"QuickenInsurance makes comparison and choices easier with new quotes summary redesign," Business Wire, Oct. 29, 1999 (http://proquest.umi.com/pqdweb?index= 13&did=0000000459040 16&SrchMode= I &sid=6&..., accessed June 22, 2004). ("QuickenInsurance")]

The following rejections are before us for review:

1. Claims 19-38 are rejected under 35 U.S.C. §112, first paragraph, as failing to comply with the written description requirement.

2. Claims 19-21 are rejected under 35 U.S.C. §103(a) as being unpatentable over Insuremarket and QuickenInsurance.

3. Claim 22 is rejected under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Walker.

4. Claim 23 is rejected under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Cullen.

5. Claims 24 and 25 are rejected under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Walker.

3

Appeal 2010-002514
Application 09/527,507

6. Claims 26-28 are rejected under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Peterson.

7. Claims 29, 31, 32, 34, 35, 37, 39, and 40 are rejected under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Cullen.

8. Claim 30 is rejected under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, Cullen, and Greco.

9. Claim 33 is rejected under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, Cullen, and Peterson.

10. Claims 36 and 38 are rejected under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, Cullen, and Walker.

## ISSUE

Did the Examiner err in rejecting the claims as unpatentable over the cited prior art combinations?

## FINDINGS OF FACT

We rely on the Examiner's factual findings stated in the Answer. Additional findings of fact may appear in the Analysis below.

## ANALYSIS

*The rejection of claims 19-38 under 35 U.S.C. §112, first paragraph, as failing to comply with the written description requirement.*

We will affirm this rejection.

4

Appeal 2010-002514
Application 09/527,507

The Examiner has rejected the claims because certain later-added subject matter is not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventors, at the time the application was filed, had possession of the claimed invention. Ans. 5-6. The limitation at issue is "with coverage commencing at the time of communication" (claims 19 and 29).

The Appellant argues that

the time of commencement of insurance coverage is defined as part of terms agreed to during the act of purchasing. Therefore, whenever the insurance coverage does commence, that time is embodied in the purchase agreement and is part of and dependent on that agreement. The time insurance coverage commences MAY be different from the time the insurance is purchased, or it MAY NOT be different from the time the insurance is purchased. The claims at issue deal with the latter situation, and not the former situation. The separate step issue has been accounted for in the claim language written by Applicant.

Reply Br. 9. The Appellant appears to argue that the Specification supports both situations: (a) insurance coverage commences at a time different from the time the insurance is purchased and (b) insurance coverage commences at a time not different from the time the insurance is purchased. Reply Br. 9. The Appellant argues that the claim covers the latter situation.

There is no express support for the subject matter "receiving by said client by way of said computer-mediated electronic communication network *a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication*" (claim 19). The Appellant points to no disclosure that expressly discloses it and we can find none.

5

Appeal 2010-002514
Application 09/527,507

As to whether the original disclosure implicitly, or inherently, discloses "a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication," we have reviewed the figures and 8 pages of the Specification and have been unable to find any discussion of coverage time. We are not persuaded that the Specification, as originally filed, provides such implicit or inherent disclosure that one can reasonably say that what is claimed and what was originally disclosed are the same. "What is claimed by the patent application must be the same as what is disclosed in the specification; otherwise the patent should not issue." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002).

Rather, the Appellant is making a case for finding that the later claimed subject matter would have been "obvious" to one of ordinary skill in the art reading the original disclosure. For example, the Appellant directs our attention to p. 6, ll. 10-14, p. 7, ll. 10-25, Abstract at line 9, and originally filed claims 14, 17 and 18 and argues that there is referred to "automobile insurance" and "automobile insurance risk based on driving records." Reply Br. 9. According to the Appellant,

> [i]t is common knowledge that a policy of automobile insurance that is in force (e.g., for which coverage has commenced) is required for registration of automobiles in many (if not all) states.... and that the newly purchased vehicle is often registered and driven off the sales lot at the conclusion of the purchase, possibly with a temporary license tag. It is well understood by the general public that a purchaser of a vehicle will require insurance coverage at the time the vehicle is first driven (e.g., off the sales lot).

6

Appeal 2010-002514
Application 09/527,507

Reply Br. 9. While it may be obvious to provide "a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication" in the context of automobile insurance provided to a buyer before driving a new car off a lot, "[o]ne shows that one is "in possession" of the invention by describing the invention, with all its claimed limitations, not that which makes it obvious." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). "Obviousness simply is not enough; the subject matter must be disclosed to establish possession." *PowerOasis, Inc. v. T-Mobile USA, Inc.* 522 F.3d 1299, 1310 (Fed. Cir. 2008).

For the foregoing reasons, the rejection is sustained.

*The rejection of claims 19-21 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket and QuickenInsurance.*

The Appellant challenges the rejection of claim 19 at App. Br. 32. The challenge of the rejection of claims 20 and 21 rely on those arguments. *See* App. Br. 36. Arguments are also provided in the Reply Brief.

If we understand the Appellant correctly, the Appellant is arguing that a prima facie case of obviousness has not been established in the first instance for (a) insurance purchased commences at the time of purchase and (b) policy of insurance is delivered to the purchaser during a communication session. *See* Reply Br. 13 ("Nothing stated in this document suggests that the insurance purchased commences at the time of purchase, nor that the policy of insurance is delivered to the purchaser during the communication session.")

The difficulty with the argument is that the claimed subject matter is not limited to the purchase of insurance. The process as claimed is directed

7

Appeal 2010-002514
Application 09/527,507

to obtaining "insurance service" comprising (a) communicating certain information and (b) receiving certain information, wherein (a) and (b) occur during a single communication session in real time. At best, the information communicated "indicat[es] that said insurance service required by said client *will be* provided." Purchase is not required. For this reason, the argument is not commensurate in scope with what is claimed.

If we understand the Appellant correctly, the Appellant is also arguing that one of ordinary skill would not have been led to perform (a) communicating certain insurance information and (b) receiving certain insurance information during a single communication session in real time. *See* Reply Br. 14 ("Applicant describes the purchase of a policy of insurance (and the delivery of the policy) as comprising a part of a single communication session.")

The difficulty with the argument is that it focuses on differences in the *type* of information being communicated. The Appellant focuses on the claim limitation "coverage commencing at the time of the communication." But what that the claims in fact call for is "receiving ... a *communication indicating* that said insurance service required by said client *will be provided with coverage commencing at the time of the communication.*" Said "coverage commencing at the time of the communication" that the Appellant focuses on is merely descriptive of the *type* of indication, in terms of information being communicated, that is received. It is properly identified as non-functional descriptive material; that is, it is descriptive of what is being indicated without having a functional effect on the act of receiving.

Patentable weight need not be given to descriptive material absent a new and unobvious functional relationship between the descriptive material

8

Appeal 2010-002514
Application 09/527,507

and the method of operation. *See In re Lowry*, 32 F.3d 1579, 1582-83 (Fed. Cir. 1994); *In re Ngai*, 367 F.3d 1336, 1336 (Fed. Cir. 2004). In that regard, the Appellant has not come forward with evidence sufficient to show that the step of receiving the communicated information is affected by the "coverage commencing at the time of the communication" as opposed to any other type of information that might be received. Absent such evidence, we are in agreement with the Examiner that it is reasonable to conclude that the claim limitation "said insurance service required by said client *will be provided with coverage commencing at the time of the communication*" is merely descriptive and as such falls under the category of patentably inconsequential subject matter. *See Ex parte Curry*, 84 USPQ2d 1272, 1275 (BPAI 2005) (informative).

> Common situations involving nonfunctional descriptive material are: - a computer-readable storage medium that differs from the prior art solely with respect to nonfunctional descriptive material, such as music or a literary work, encoded on the medium, - a computer that differs from the prior art solely with respect to nonfunctional descriptive material that cannot alter how the machine functions (i.e., the descriptive material does not reconfigure the computer), or - a process that differs from the prior art only with respect to nonfunctional descriptive material that cannot alter how the process steps are to be performed to achieve the utility of the invention.
>
> Thus, if the prior art suggests storing a song on a disk, merely choosing a particular song to store on the disk would be presumed to be well within the level of ordinary skill in the art at the time the invention was made. The difference between the prior art and the claimed invention is simply a rearrangement of nonfunctional descriptive material.

*See also Ex parte Mathias*, 84 USPQ2d 1276, 1279 (BPAI 2005) (informative).

9

Appeal 2010-002514
Application 09/527,507

Nonfunctional descriptive material cannot render nonobvious an invention that would have otherwise been obvious. *In re Ngai*, 367 F.3d at 1339. *Cf. In re Gulack*, 703 F.2d 1381, 1385 (Fed. Cir. 1983) (when descriptive material is not functionally related to the substrate, the descriptive material will not distinguish the invention from the prior art in terms of patentability).

The Appellant responds that

> The time of commencement of insurance coverage is hardly non-functional. Many suits over insurance coverage include as elements to be proved exactly when the insurance coverage began and when the loss claimed to be covered by the insurance occurred. Such suits can and do turn on the relative timing of those two occurrences.

App. Br. 32. But the question is not whether the time of commencement of insurance coverage is non-functional per se. The question is whether it is nonfunctional in the context of what is claimed. Claim 19 is not directed to suits over insurance coverage or any other matter that would depend on the time of commencement of insurance coverage. Claim 19 is drawn simply to a method comprising two steps: communicating and receiving information. Those two acts are not dependent on the time of commencement of insurance coverage that might be indicated in the information received. The indicated time of commencement of insurance coverage has no effect on performing the two actions of communicating and receiving information that are claimed.

The Appellant also argues that there is a legal inconsistency in rejecting the claims for lack of written descriptive support with regard to the phrase "coverage commencing at the time of the communication" while also

10

Appeal 2010-002514
Application 09/527,507

dismissing the phrase as being directed to nonfunctional descriptive material that is patentably inconsequential.  E.g., App. Br. 25.  We see no inconsistency.  The phrase is a limitation in the claims.  That the subject matter is patentably inconsequential as being nonfunctional descriptive material – in the context of what is being claimed – does not negate the fact that it is a claim limitation.  It simply carries little weight in determining whether the claimed subject matter as a whole would have been obvious to one of ordinary skill in the art.  As explained earlier, nonfunctional descriptive material cannot render nonobvious an invention that would have otherwise been obvious.  That does not mean, however, that the Appellant is absolved of providing written descriptive support for the subject matter covered by the claim phrase at issue.  Notwithstanding that it is determined to be nonfunctional descriptive material, it is still a limitation in the claim and, as such, it must be described.  *See Lockwood* ("[o]ne shows that one is "in possession" of the invention by describing the invention, *with all its claimed limitations*, not that which makes it obvious.")  Emphasis added.

For the foregoing reasons, we find no error in the rejection of claims 19-21.

*The rejection of claim 22 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Walker.*

The Appellant argues that Walker "does not refer to selling insurance policy to an individual, nor does it describe the purchase of a new insurance policy by an individual."  App. Br. 40-41.  We do not see this in claim 22 or in any of the claims on which it depends.  "Many of appellant's arguments

11

Appeal 2010-002514
Application 09/527,507

fail from the outset because, . . . they are not based on limitations appearing in the claims . . . ." *In re Self*, 671 F.2d 1344, 1348 (CCPA 1982).

The Appellant also argues that Walker does not disclose what is claimed. App. Br. 41. Yet the disclosure the Examiner relied upon (e.g., col 14, ll. 45-52; *see* Ans. 9) is not addressed.

The rejection is sustained.


*The rejection of claim 23 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Cullen.*

The Appellant points out that claim 23 recites "[t]he process by which a client obtains an insurance service from a vendor of claim 19, wherein information that identifies said insurance service required by said client is information that determines a risk rating of said client." App. Br. 37. As with the indication in claim 19 that the communication indicates that said "insurance service required by said client will be provided with coverage commencing at the time of the communication," this too is directed to nonfunctional descriptive material that is patentably inconsequential. Accordingly, the argument that this type of information is different from the "aversion to risk" (Cullen, col. 19) type of information Cullen discloses is not persuasive as to error in the rejection.


*The rejection of claims 24 and 25 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Walker.*

The Appellant argues that Walker "does not refer to selling insurance policy to an individual, nor does it describe the purchase of a new insurance

12

Appeal 2010-002514
Application 09/527,507

policy by an individual." App. Br. 40-41. We do not see this in claims 24 and 25 or in any of the claims on which they depends.

The Appellant also argues that Walker does not disclose what is claimed. App. Br. 41. Yet the disclosure the Examiner relied upon (*see* Ans. 12) is not addressed.

The rejection is sustained.

*The rejection of claims 26-28 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Peterson.*

The Appellant relies on the arguments challenging the rejection of claim 19. App. Br. 36. Because those arguments were found (supra) unpersuasive as to error in the rejection of claim 19, we reach the same conclusion with regard to those arguments as to error in the rejection of claims 26-28.

Notwithstanding that the claimed subject matter is directed to nonfunctional descriptive material and thus patentably inconsequential for the reasons already explained, the Appellant's other argument that the Examiner failed to present a prima facie case of obviousness is unpersuasive for other reasons. App. Br. 39. The Appellant failed to address the Peterson disclosures the Examiner cited as evidence that Peterson discloses an indication of a claim covered by a policy of insurance as claimed by disclosing submitting an insurance claim, receiving approval of the insurance claim, and receiving payment from a bank. *See* Ans. 13. As well, in arguing that "Applicant submits that the Office Action has not shown that any explicit or implicit motivation, suggestion or teaching exists in either Peterson or the QuickInsurance references to combine the subject matter of

13

Appeal 2010-002514
Application 09/527,507

their disclosures" (App. Br. 39), the Appellant overlooked the clarification given by the Supreme Court in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007); namely, "the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ" (*KSR* at 418).

   The rejection is sustained.


*The rejection of claim 29, 31, 32, 34, 35, 37, 39, and 40 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Cullen.*

   Claims 31, 32, 34, 35, and 37, are not separately argued. Accordingly they stand or fall with claim 29 on which they depend. *See* App. Br. 38.

   As to the rejection of claim 29, "Applicant repeats all of the arguments presented above with regard to claim 19 as to the failure of the Examiner to present a prima facie rejection of independent claim 29." App. Br. 33. Because those arguments were found (*supra*) unpersuasive as to error in the rejection of claim 29, we reach the same conclusion as to error in the rejection of claim 29, and as to error in the rejection of claims 31, 32, 34, 35, and 37, that depend on claim 29.

   We reach the same conclusion as to the rejection of claims 39 and 40, the challenge of which is the same as that against claim 29. *See* App. Br. 34-35.

14

Appeal 2010-002514
Application 09/527,507

*The rejection of claim 30 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, Cullen, and Greco.*

Notwithstanding that the claimed subject matter ("communication from said portal indicating that said insurance service required by said client will not be provided") is directed to nonfunctional descriptive material and thus patentably inconsequential for the reasons already explained, the Appellant's other argument that the Examiner failed to present a prima facie case of obviousness is unpersuasive for other reasons. App. Br. 43. The Appellant failed to address the Greco disclosures (at col. 3, l. 54 to col. 4, l. 12) the Examiner relied upon. *See* Ans. 20. And, in arguing that "there is no motivation in Greco to combine Greco with any art that requires a computer-mediated communication with a user" (App. Br. 43), the Appellant overlooked the clarification given by the Supreme Court in *KSR*. *Ibid*.

The rejection is sustained.

*The rejection of claim 33 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, Cullen, and Peterson.*

The Appellant argues that a prima facie case of obviousness has not been made out in the first instance. App. Br. 44-45. We disagree with that conclusion. The Examiner (Ans. 21) presented a position for reaching a legal conclusion of obviousness that is based on an articulated reasoning with logical underpinning and supported by evidence via specific citations to disclosures in the cited prior art – none of which appear to have been addressed in the Briefs.

The rejection is sustained.

15

Appeal 2010-002514
Application 09/527,507

*The rejection of claims 36 and 38 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, Cullen, and Walker.*

The Appellant argues that a prima facie case of obviousness has not been made out in the first instance. App. Br. 45-46. We disagree with that conclusion. The Examiner (Ans. 22-23) presented a position for reaching a separate legal conclusion of obviousness for the subject matter of claims 36 and 38 based on an articulated reasoning with logical underpinning and supported by evidence via specific citations to disclosures in the cited prior art – none of which appear to have been addressed in the Briefs.

The rejection is sustained.

## CONCLUSIONS

The rejections of claims 19-38 under 35 U.S.C. §112, first paragraph, as failing to comply with the written description requirement; claims 19-21 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket and QuickenInsurance; claim 22 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Walker; claim 23 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Cullen; claims 24 and 25 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Walker; claims 26-28 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Peterson; claims 29, 31, 32, 34, 35, 37, 39, and 40 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, and Cullen; claim 30 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance, Cullen, and Greco; claim 33 under 35 U.S.C. §103(a) as being unpatentable over Insuremarket, QuickenInsurance,

16

Appeal 2010-002514
Application 09/527,507

Cullen, and Peterson; and, claims 36 and 38 under 35 U.S.C. §103(a) as
being unpatentable over Insuremarket, QuickenInsurance, Cullen, and
Walker, are affirmed.

## DECISION

The decision of the Examiner to reject claims 19-40 is affirmed.

## AFFIRMED

Klh

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of May 2014, I caused this Brief of

Appellant Andrew Ian Douglass to be filed electronically with the Clerk of the

Court using the CM/ECF System, which will send notice of such filing to the

following registered CM/ECF users:

Nathan K. Kelley, Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
Tel: (571) 272-9035
Fax: (571) 273-0373
nathan.kelley@uspto.gov

Jeremiah S. Helm, Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
Tel: (571) 272-9035
Fax: (571) 273-0373
jeremiah.helm@uspto.gov

Jamie L. Simpson, Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
Tel: (571) 272-9035
Fax: (571) 273-0373
jamie.simpson@uspto.gov

/s/ *John T. Harding*
_____
John T. Harding
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Tel: (617) 439-7558
Fax: (617) 342-4888
jharding@morrisonmahoney.com

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 13,126 words, based on the "Word Count" feature of Microsoft Word, including footnotes.  Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, Table of Authorities and Statement of Related Cases.

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word  in 14-point Times New Roman.


/s/ *John T. Harding*
_____
John T. Harding
Counsel for Appellant

Dated:  May 30, 2014