Appeal No. 2014-1207
(U.S. Serial No. 09/527,507)

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
_____

**IN RE ANDREW IAN DOUGLASS**

_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board
_____

**BRIEF FOR APPELLEE – DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

NATHAN K. KELLEY
Solicitor

JEREMIAH S. HELM
JAMIE L. SIMPSON
Associate Solicitors

Mail Stop 8
P.O. Box 1450
Alexandria, VA  22313-1450
(571) 272-9035

*Attorneys for the Director of
the United States Patent and
Trademark Office*

August 11, 2014

# Table of Contents

**Page**

I.     Statement of the Issues.................................................................1

II.     Statement of the Case.................................................................2

     A.     The '507 application.............................................................2

     B.     The prior art.......................................................................5

         1.     The Insuremarket by Quicken webpage: a website that allows a user to purchase insurance based on real-time insurance quotes ...............................................................6

         2.     The QuickenInsurance article......................................7

         3.     Other Prior Art.........................................................7

     C.     The Examiner's rejection and the Board decision............................10

III.     Summary of the Argument.........................................................12

IV.     Argument.............................................................................14

     A.     The standard of review.......................................................14

     B.     Claims 19-40 are obvious in view of the prior art............................15

         1.     The Board correctly held there was a prima facie case of obviousness.............................................................15

2.      The Board correctly found Douglass's declaration and
        supporting evidence was insufficient to swear behind the
        prior art.....................................................................................24

C.      Substantial evidence supports the Board's findings that claims
        19-38 lack written description support................................................26

D.      The '507 application is not directed to patentable subject matter
        under 35 U.S.C. § 101.........................................................................30

V.      Conclusion...................................................................................................32

TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages(s)**

Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.,
  607 F.3d 817 (Fed. Cir. 2010) ...............................................................16

Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014) ....................... 13, 30-32

Ariad Pharms., Inc. v. Eli Lilly & Co., 598 F.3d 1336 (Fed. Cir. 2010)................28

Bilski v. Kappos, 561 U.S. 593, 130 S. Ct. 3218 (2010).........................................15

Bimeda Research & Dev. Ltd., In re, 724 F.3d 1320 (Fed. Cir. 2013) ...................27

Comiskey, In re, 554 F.3d 967 (Fed. Cir. 2009).....................................................15

Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938)................................................14

Enhanced Sec. Research, LLC, In re, 739 F.3d 1347 (Fed. Cir. 2014) ............ 25, 26

Gartside, In re, 203 F.3d 1305 (Fed. Cir. 2000) .....................................................14

Jolley, In re, 308 F.3d 1317 (Fed. Cir. 2002) .........................................................14

Kao, In re, 639 F.3d 1057 (Fed. Cir. 2011)............................................................22

King Pharm., Inc. v. Eon Labs, Inc., 616 F.3d 1267 (Fed. Cir. 2010) ............ 22, 24

KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398 (2007)................................. 19-20, 22

Lockwood v. Am. Airlines, Inc., 107 F.3d 1565 (Fed. Cir. 1997) ................... 11, 28

Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.,
  73 F.3d 1085 (Fed. Cir. 1995) ............................................................15

PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299 (Fed. Cir. 2008) ...........11

Singh v. Brake, 317 F.3d 1334 (Fed. Cir. 2003)....................................................25

SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312 (Fed. Cir. 2006) ......16

Watts, In re, 354 F.3d 1362 (Fed. Cir. 2004).........................................................14

## Statutes and Regulations

35 U.S.C. § 101 ..................................................................... 13, 15, 30, 32

35 U.S.C. § 103 .........................................................................................30

35 U.S.C. § 112 ......................................................................................2, 30

37 C.F.R. § 1.131.................................................................................10, 24

37 C.F.R. § 1.131(b)...................................................................................25

## Other Authorities

Manual of Patent Examining Procedure § 715.......................................................24

iv

## STATEMENT OF RELATED CASES

The Director is unaware of any other appeal from the Patent Trial and

Appeal Board (Board) for the United States Patent and Trademark Office (USPTO)

in connection with this patent application that has previously been before this

Court.  The Director is also unaware of any other cases pending in this or any other

court that will directly affect, or be directly affected, by the Court's decision in this

appeal.

# I.    STATEMENT OF THE ISSUES

Appellant Andrew Ian Douglass (Douglass) claims a "process by which a client obtains an insurance service from a vendor" using a "computer-mediated electronic communication network" with a communication indicating that the insurance coverage will be "commencing at the time of the communication." A779 (Claim 19).  In other words, Douglass seeks to patent the online sale of insurance.  The Examiner rejected claims 19-40 as obvious in view of a variety of prior art references.  The primary reference discloses a process for obtaining insurance from a vendor using a computer-mediated electronic communication network which takes place in real time.  Secondary references disclose the remaining limitations.  The Examiner also rejected claims 19-38 for lack of written description for the limitation of a communication indicating that coverage will be "commencing at the time of the communication".  The issues on appeal are (1) whether claims 19-40 are unpatentable as obvious in view of the prior art; and (2) whether substantial evidence supports the Board's finding that claims 19-38 lack written description support.

## II.    STATEMENT OF THE CASE

This case involves U.S. Application No. 09/527,507 ('507 application). A23-44.  Entitled "System and Process for Virtual Management of Risk of Injury to Property or Casualty," the '507 application is generally directed towards the sale of insurance policies using the Internet or telephone.  According to the application, the invention's "virtual risk management system and process," which involves "a combination of Internet and telemarketing," decreases the "expense costs of sales commissions and salaries." A28-29.  The Examiner rejected all pending claims (19-40) as obvious in view of a variety of prior art references and also rejected claims 19-38 as lacking written descriptions pursuant to 35 U.S.C. § 112.  The Board affirmed.  A1-18.  This appeal followed.

### A.    The '507 application

The '507 application was filed March 16, 2000.  A23.  The application explains that "[t]he property and casualty insurance industry has lagged behind many other financial industries, because of high costs of operations." A27.  It identifies two types of expenses – loss costs and expense costs – which result in the high overall cost of operation. A27-28.  Loss costs refer to "the payment to the insured upon covered losses." A27.  Expense costs refer to the cost of "daily operations." A27.  The '507 application explains that "[t]hrough a combination of

2

Internet and telemarketing, expense costs of sales commissions and salaries are substantially decreased." A28-29. The '507 application also indicates that call centers, "used on an outsourced basis" avoid many expense costs. A29.

Figure 1 shows the virtual risk management system from the point of view of a prospective customer seeking insurance. A30. In a preferred embodiment, the customer (**1**) purchases a policy (**3**) from a service center (**10**) using a credit card (**2**). A30. The customer accesses the service center either by using the Internet or calling a call center. A30.



'507 application Figure 1 (A40).

The activity flow involved in the insurance process is shown in Figure 3. The customer provides credit card information to a call center, either via the Internet or by calling a 1-800 number. A31. The call center provides the information to a credit processing center, which determines whether to approve the

3

transaction. A31. The call center also sends underwriting information to an underwriting center, which collects information, grants underwriting approval, and arranges for reinsurance. A31. The application explains that by using the Internet, "this activity can be done in one session, that is, in near 'real time.'" A31.



'507 application Figure 3 (A42). The '507 specification is silent as to when the insurance policy will come into effect.

Claim 19 is illustrative of claims in the present appeal and broadly recites the online sale of insurance. Claim 19 reads:

> A process by which a client obtains an insurance service from a vendor, comprising the steps of:
>
> (a) communicating from a client by way of a computer-mediated electronic communication network at least one of information that identifies an insurance service required by said client and an identifier suitable for making a payment for the account of said client; and

4

> (b) receiving by said client by way of said computer-mediated electronic communication network a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication;

> wherein steps (a) and (b) occur during a single communication session in real time.

A779.  Claims 39 and 40 (A783-84), which were added late in prosecution, are generally similar to claim 19, but do not require an indication that coverage will commence at the time of the communication.

## B.    The prior art

All of the pending claims (claims 19-40, A779-84) stand rejected as obvious in view of two main prior art references, the Insuremarket by Quicken[1] (A396-407) and the QuickenInsurance article[2] (A408-11).  A4-5.  In addition to the Insuremarket by Quicken webpage and the QuickenInsurance article, the Examiner also relied upon the following prior art references:  U.S. Patent No. 5,809,478 (Greco); U.S. Patent No. 6,119,093 (Walker); U.S. Patent No. 6,272,528 (Cullen); and U.S. Patent No. 6,343,271 (Peterson).

---

1.    Insuremarket by Quicken, www.insuremarket.com, accessed at www.archive.org, 12/12/1998-1/27/1999.
2.    "Quicken Insurance makes comparison and choices easier with new quotes summary redesign," Business Editors and Insurance Writers, Business Wire, October 29, 1999.

### 1.    The Insuremarket by Quicken webpage:  a website that allows a user to purchase insurance based on real-time insurance quotes

The Insuremarket by Quicken webpage (A396-407) indicates it is an "Online Insurance Resource" where "you can receive real-time quotes, obtain information, connect with agents, and compare quotes and purchase policies from the nation's leading insurance companies." A396.  It urges the user to "[c]lick on Quotes, Purchasing & Agents for the Web's simplest, quickest way to compare quotes and purchase a policy." A397.  A note at the bottom of the page indicates that "Intuit Insurance Services, Inc. and/or its President, Steven P. Aldrich, are licensed as insurance agents." A397.  On the "Quotes, Purchasing, & Agents" page, the website lists a number of different types of insurance available, including auto, disability, and medical insurance.  A399-400.

The Insuremarket website explains "how it works" with a series of steps. First, the applicant fills out a questionnaire "to determine your specific policy and coverage needs." A401.  A summary screen then allows the applicant to compare different carriers by a variety of factors, "including annual premium." A401.  The applicant can learn more about an individual policy by selecting the "View/Buy this Policy" option. A401.  By going to the policy screen, the applicant can see all of the features and benefits of the insurance policy. A401.  After selecting the

6

policy that is "right for you," the applicant "can apply for it right online."  A401.

After filling out the application, the applicant is taken to the "Purchase Screen" and

given "payment options for both the initial 'binder' payment, and for subsequent

premium payments."  A401-02.  The applicant can thus "purchase a policy right

away," or can save quotes for purchase at a later visit.  A403.

### 2.    The QuickenInsurance article

The QuickenInsurance article (A408-11) is a press release announcing a new

name for the Quicken Insuremarket webpage, and describing the services

available.  The article explains that, "[w]ith a single click" the consumer can

receive "instant live insurance quotes."  A408-09.  The article also explains that

consumers using the webpage "have the option to purchases [sic] auto policies

directly online, a feature offered exclusively through QuickenInsurance."  A409.

### 3.    Other Prior Art

The Examiner rejected claim 19 (as well as claims 20-21) based on just the

Insuremarket and QuickenInsurance article references, and cited several other

pieces of prior art when rejecting the remaining claims.  On appeal, Douglass

limits his arguments exclusively to the Insuremarket and QuickenInsurance art, and

does not challenge the Examiner's findings with respect to these additional

references.  They are discussed briefly herein to provide additional context as to the state of the art at the time the invention was made.

U.S. Patent No. 5,809,478 (Greco) is entitled "Method for Accessing and Evaluating Information for Processing an Application for Insurance."  A565-81.  It discloses an automated system for matching risk data in a case file to a series of risk evaluation profiles in order to render a decision to accept or reject the policy.  A576 col.3 l.54-col.4 l.12.  The system in Greco can then send the records and decision to another computer.  A576 col.4 ll.6-12.

U.S. Patent No. 6,119,093 (Walker) is entitled "System for Syndication of Insurance."  A529-64.  Walker discloses the sale of insurance via either the Internet or telephone.  A561 col.14 ll.45-52.  Walker discloses the use of a credit card to complete the transaction.  See, e.g., A558 col.7 ll.7-40.  The purpose of Walker is to use the known benefits of the Internet and credit card systems in the context of the insurance industry.  A555 col.2 ll.1-3.

U.S. Patent No. 6,272,528 (Cullen) is entitled "Computer Method for Delivery of Financial Services."  A486-504.  Cullen discloses a series of computers which communicate with each other over a network, for example the Internet.  A500 col.3 ll.2-7.  The system provides a link between user computers, broker computers, and insurance company computers (which provides access to

8

underwriting services). A500 ll.2-25. The Cullen system allows a mobile agent to gather information on a user requesting an insurance quotation. A501 col.6 ll.9-65; see also A499 col.1 ll.47-60. For example, the agent may visit servers belonging to insurance company and provide access to different vehicle insurance policies to the user, and may also obtain quotations on behalf of the user. A499 col.2 ll.1-11. The user may also make an insurance claim via the Internet using Cullen's system. A499 col.2 ll.61-67; A501 col.6 ll.9-20.

U.S. Patent No. 6,343,271 (Peterson) is entitled "Electronic Creation, Submission, Adjudication, and Payment of Health Insurance Claims." A505-28. Peterson discloses a claims processing system for medical insurance claims involving electronic transfer of funds to reduce expenses. A521 col.10 ll.7-16. It also discloses that adjudicable claims can be reviewed using a processor in a central system. A524 col.15 ll.41-43. Upon approval of a claim, a communication is sent to a bank to electronically transfer funds. A524 col.15 ll.41-47; see also A524-25, col.16 l.66-col.17 l.15. This communication can take place via the Internet. A524 col.15 ll.49-51. The automatic adjudication has efficiency and cost benefits. A517 col.2 ll.52-67.

9

## C.    The Examiner's rejection and the Board decision

The Examiner rejected the '507 claims on two bases.  A853-88.  First, the Examiner rejected all of the pending claims (19-40) as obvious in view of two main references, the Quicken Insuremarket webpage and the QuickenInsurance article (some rejections further relied on additional prior art references to teach additional limitations).  A859-76.  Second, the Examiner rejected claims 19-38 as unpatentable for lack of written description support for the limitation "with coverage commencing at the time of communication."  A858-59.  The Examiner also rejected the applicant's attempt to swear behind the QuickenInsurance article via a declaration pursuant to 37 C.F.R. § 1.131 because the applicant did not provide either sufficient proof of conception or sufficient proof of diligence.  A877-79.  The Board adopted these factual findings.  A5.

The Board agreed with the Examiner that there is insufficient written description support for the "coverage commencing at the time of the communication" limitation, finding that the "Appellant points to no disclosure that expressly discloses it."  A6.  Likewise, the Board found that the disclosure does not implicitly or inherently disclose the limitation.  A7.  The Board explained that the Appellant's position amounted to, at best, an argument that the limitation was obvious in view of certain portions of the disclosure.  A7-8.  Because rendering a

10

limitation obvious does not demonstrate possession, the Board affirmed the Examiner's rejection. A8 (citing Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1572 (Fed. Cir. 1997) & PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1310 (Fed. Cir. 2008)).

The Board also affirmed the Examiner's obviousness rejection. The applicant attempted to distinguish the prior art on the basis that the claims at issue require a "communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication." A9. The Board, however, agreed with the Examiner that the content of the communication – what is said or communicated to the person seeking insurance – is not a meaningful distinction from the prior art. A9. Because the content of the communication did not distinguish the claimed invention from the prior art process of selling insurance over the Internet, the Board affirmed the rejection of claims 19-40 as unpatentable over the prior art Quicken Insuremarket and the QuickenInsurance article, as well as other prior art.

### III.   SUMMARY OF THE ARGUMENT

Substantial evidence supports the Board's ultimate conclusion that all the claims at issue (19-40) are obvious in view of the prior art.  The Board affirmed the Examiner's finding that the prior art includes an Internet website which allows a client to request insurance quotes, send payment information, and receive confirmation that an insurance policy will be provided.  The claims at issue are all obvious variations on this known website.  While the applicant argues it is not obvious to include a communication indicating that the insurance coverage will begin with the communication received back, this does not limit the claim in a meaningful way and is obvious in any case.  Likewise, the applicant's argument that the process must take place in real time does not distinguish the prior art which, like the claims at issue, uses the Internet to sell insurance to clients.

Substantial evidence also supports the Board's findings that claims 19-38 lack written description support.  Each of claims 19-38 includes the limitation that the client will receive "a communication indicating that said insurance service required by said client will be provided <u>with coverage commencing at the time of the communication</u>."  The applicant's disclosure, however, is completely silent as to when the requested insurance will commence.  Likewise, it is not inherent or implicit in the disclosure that the client will be notified that coverage will

12

commence at the time of the communication.  The applicant's arguments require the Court to make a series of assumptions and logical leaps to reach the claimed limitation, but this is not enough to demonstrate that the applicant had possession of the invention as claimed.  Indeed, the applicant's main argument for non-obviousness is that insurance is <u>not</u> typically immediately effective, even if an agreement is in place.  Because substantial evidence supports the Board's decision, the written description rejection must be affirmed.

Finally, after this appeal was filed, the Supreme Court issued its decision in <u>Alice Corp. v. CLS Bank International</u>, 134 S. Ct. 2347 (2014), which clarified the scope of patentable subject matter under 35 U.S.C. § 101.  The claims on appeal are generally directed to a process for buying insurance involving the steps of (a) the client communicating the desire for insurance and providing payment information; and (b) the client receiving a communication indicating that insurance will be provided.  These communications happen to take place via a computer-mediated electronic communication network, which could be the Internet, but which also includes a telephone connection.  Post-<u>Alice</u>, it is clear that the pending claims are not patentable under 35 U.S.C. § 101.

13

Substantial evidence supports the Board's determinations. There was no legal error in its analysis. The claims are not directed to patentable subject matter. The Board's decision should be affirmed.

## IV.    ARGUMENT

### A.    The standard of review

Douglass bears the burden to "not only show the existence of error, but also show that the error was in fact harmful because it affected the decision below." In re Watts, 354 F.3d 1362, 1369 (Fed. Cir. 2004). This Court reviews the Board's factual determinations for substantial evidence, and reviews legal conclusions de novo. In re Gartside, 203 F.3d 1305, 1315-16 (Fed. Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." In re Jolley, 308 F.3d 1317, 1329 (Fed. Cir. 2002). Whether an invention would have been obvious is a question of law based on underlying factual determinations. Gartside, 203 F.3d at 1316. What a reference discloses is a

14

question of fact.  <u>Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.</u>, 73 F.3d 1085, 1088 (Fed. Cir. 1995).

In certain situations, it is appropriate to consider section 101 as a threshold issue.  <u>Bilski v. Kappos</u>, 561 U.S. 593, 130 S.Ct. 3218, 3225 (2010).  A court "may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief.  The § 101 issue is an antecedent question to the § 103 issue."  <u>In re Comiskey</u>, 554 F.3d 967, 975 n.7 (Fed. Cir. 2009) (internal quotations, citations omitted, ellipsis in original).

**B.  Claims 19-40 are obvious in view of the prior art**

   **1.  The Board correctly held there was a prima facie case of obviousness**

The Board affirmed the Examiner's rejection of claim 19 (as well as claims 20-21) as obvious based on just two references, the Insuremarket website and the QuickenInsurance article.  The remainder of the claims were rejected as obvious based on the Insuremarket website and QuickenInsurance article in view of a variety of additional references.  On appeal, Douglass does not argue the claims separately, and instead hinges his arguments on two limitations, both present in claim 19:  that the process is carried out in "real time" and that "a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication."  Douglass has waived

15

any arguments related to other claim limitations by failing to raise them in his opening brief. See, e.g., Advanced Magnetic Closures, Inc. v. Rome Fastener Corp., 607 F.3d 817, 833 (Fed. Cir. 2010) ("This court has consistently held that a party waives an argument not raised in its opening brief."); SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived."). Accordingly, the Director focuses on these two limitations.

In view of Douglass's arguments on appeal, the Director treats claim 19 as generally illustrative of the claims in the present appeal. Claim 19 reads:

> A process by which a client obtains an insurance service from a vendor, comprising the steps of:
>
> (a) communicating from a client by way of a computer-mediated electronic communication network at least one of information that identifies an insurance service required by said client and an identifier suitable for making a payment for the account of said client; and
>
> (b) receiving by said client by way of said computer-mediated electronic communication network a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication;
>
> wherein steps (a) and (b) occur during a single communication session in real time.

16

A779.  Claims 39 and 40 are similar to the other claims, but were added late in prosecution and do not include the "coverage commencing at the time of the communication" limitation.

In its decision, the Board relied on the Examiner's factual findings, as stated in the Examiner's Answer.  A5; see also A853-88 (Examiner's Answer).  The Examiner found that the Insuremarket website discloses all aspects of the claimed invention, other than explicitly stating that the insurance purchasing activity occurs in a single communication session.  A859-62.  In specific, the Examiner found that the Insuremarket website discloses a process by which a user can obtain insurance from insurance companies.  A860.  The Examiner then found that the user fills out an online application, and is then presented a purchase screen.  The purchase screen gives options for both the initial binder payment and for subsequent premiums.  A860.  It also gives a breakdown of the policy the user is purchasing.  A860-61.  The Examiner further found that because the user is given the option of purchasing an insurance policy, "this is an indication that the insurance company is providing the insurance policy to the user."  A861.

While the Examiner found there was no explicit disclosure that the Insuremarket website was necessarily used in a "single communication session," the Examiner did find that a user could choose to carry out all of the steps in "real-

17

time" in a single session.  A861.  The Examiner also cited the QuickenInsurance article,[3] which discloses that a user can "instantly" receive insurance quotations with a "single click" and then have the option to purchase insurance, as evidence that the website was designed to operate in a single session.  A861.  The Examiner explained that one skilled in the art would be motivated to use the "single click" feature to reduce the time needed to purchase a policy.  A861-62.

The Examiner further found that the limitation "a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication" did not meaningfully distinguish the claimed invention from the prior art.  A884.  The Examiner reasoned that the content of the communication – that insurance will be provided with coverage commencing at the time of the communication – is unrelated to the actual underlying invention, which is a process by which a client obtains insurance service by sending and receiving communications via, e.g, the Internet.  A884.  In other words, regardless of whether the person seeking insurance is told the policy is effective immediately or told a policy will begin the next day, the actual function of the invention is the same.  The Board affirmed that the content of the

---

3.    The QuickenInsurance article describes the renamed Insuremarket website.

communication did not distinguish the claimed invention from the prior art, which disclosed exactly the same functional process.  A884, A8-12.

All of these findings are supported by substantial evidence.  The Insuremarket website indicates that a customer "can receive real-time quotes, obtain information, connect with agents, and compare quotes and purchase policies from the nation's leading insurance companies."  A396.  It also explains the customer can "[c]onnect instantly" with a variety of insurance companies.  A396-97.  The customer can select from different insurance policies using the Internet.  A396-97.  For example, the website offers a "Life Insurance Marketplace" and an "Auto Insurance Marketplace" as ways for customers to shop for and purchase insurance.  A399.

As part of the process, the Insuremarket user fills out a "policy needs questionnaire," and then receives a "summary screen" which allows the user to "compare policy options."  A401.  This screen includes the annual premium.  A401.  The user selects a policy, and the Insuremarket website gives "payment options for both the initial 'binder' payment, and for subsequent premium payments."  A401-02.  The user then enters a payment method.  A402.

As the Examiner found, it is a routine design choice for a consumer to use the website to purchase insurance in a single session in real time.  Cf. KSR, 550

U.S. 398, 427 (2007) ("[T]he results of ordinary innovation are not the subject of exclusive rights under the patent laws.").  Indeed, using the website to purchase insurance in a single session is one of a small number of options (the user could also complete the insurance purchase in multiple sessions).  Regardless, the Examiner also supplied the QuickenInsurance article, which discusses the Insuremarket website.  See A409 (explaining "the business name Quicken InsureMarket Service has changed to QuickenInsurance").  The QuickenInsurance article explains that "[w]ith a single click, consumers can compare details of their quotes," using the website.  A409.  It also indicates that the site offers "instant live insurance quotes" and gives consumers "the option to purchase[] auto policies directly online."  A409.  The Board correctly held the Insuremarket website, alone or in combination with the QuickenInsurance article, discloses or renders obvious every functional limitation of the claimed invention.

On appeal Douglass argues that neither the Insuremarket website nor the QuickenInsurance article allow the "real-time" completion of an insurance transaction in a single communication session.[4]  Douglass Br. 33.  Both references,

--------

[4]    While Douglass seeks to distinguish the invention from the prior art based on the "real-time" limitation, the specification makes clear that the transaction actually takes place in "near 'real time.'"  A31 ll.16-18 (emphasis added).

20

however, support the finding that a consumer can purchase insurance in a single session, and the Insuremarket website actually uses the words "real-time" to describe the service.  A396.  Douglass also points to a press release which he claims demonstrates that the Insuremarket website did not contemplate a real-time transaction.  Douglass Br. 34-35 (citing A442-44).  That press release, however, indicates that the website offers "real-time rate quotes," and "real-time capabilities" including producing "an individualized rate quote; verifying driving records with states while a transaction is being processed online; processing payment online; providing immediate notification to approved consumers."  A443.

Despite the confirmation that the Insuremarket website offered its service in real time, Douglass nevertheless argues that the press release undermines the reference because the release states coverage can "commence as soon as after midnight of the following business day."  A443.  As an initial point, Douglass is wrong that the claims require delivery of an active insurance policy – the claims only require a <u>communication</u> indicating that coverage will commence at the time of the communication.[5]  Moreover, it is strange that Douglass would hinge his

---

5.    Douglass argues the Examiner improperly ignored his rebuttal evidence.  This is not the case.  There was no need to address the press release separately because Douglass's attendant arguments rehash arguments already addressed by the Examiner.  <u>See, e.g.</u>, A885 (Examiner's Answer, discussing

21

arguments for non-obviousness on the time the policy commences when, as discussed below, his specification is completely silent on this point. Furthermore, even Douglass admits that the timing of any insurance policy is a routine design choice, determined at least in part by the entity offering the insurance. See, e.g., Douglass Br. 37 (distinguishing the Insuremarket prior art because the website is "for brokering insurance but not for underwriting insurance"). This is exactly the type of predictable variation which KSR explained is likely obvious. See KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 417 (2007) ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious . . . .").

Ultimately, however, the Board correctly concluded that the content of the communication fails to distinguish the claims from the prior art because it is functionally unrelated to the underlying claim. Where, as here, "an instructional limitation is added to a method . . . the relevant inquiry" is whether there is a "'new and unobvious functional relationship' with the known method." King Pharm., Inc. v. Eon Labs, Inc., 616 F.3d 1267, 1279 (Fed. Cir. 2010)); see also In re Kao, 639 F.3d 1057, 1072-73 (Fed. Cir. 2011) (step of informing patient entitled to no

---

Douglass's rebuttal arguments).

patentable weight "absent a functional relationship between the informing and administering steps"). As the Board found, there is no such relationship here, and there is no reason to believe that anything about the communication step would need to be altered based on the content of the communication.

There is no dispute that the claims in this appeal are directed to the use of a computer-mediated electronic communication network to transmit communications from and to a person seeking insurance in a single communications session in real time. The Insuremarket prior art clearly demonstrates that this method was known well before the time of the invention. The additional limitation – that the communication indicates the policy will start at the time of the communication – is functionally unrelated to the operation of the rest of the claim. Regardless of whether the person seeking insurance is told the policy will start immediately, tomorrow, or next year, the underlying process is exactly the same. And since the insured does receive the policy at the time of the transaction in the prior art, they clearly receive a communication about when coverage commences, whenever that may be. There is no evidence that the content of the communication created a new and unobvious functional relationship, and it therefore cannot lend patentable weight to an otherwise obvious process. Any other result would lead to "the

indefinite patenting" of known methods "by the simple inclusion of novel, yet functionally unrelated limitations." <u>King</u>, 616 F.3d at 1279.

**2.    The Board correctly found Douglass's declaration and supporting evidence was insufficient to swear behind the prior art**

On appeal Douglass argues that the QuickenInsurance article is not prior art in view of a declaration he submitted which, Douglass claims, evidences prior conception and diligence in reducing the claimed invention to practice.  As an initial point, the Examiner's rejection does not necessarily require the QuickenInsurance article.  A861.  The Examiner explained that the Insuremarket website alone disclosed that it could be used in a single communication session "as a matter of user choice."  A861.  The Examiner then, "additionally provided the QuickenInsurance article" as "further evidence" that the website can be used in a single communication session.  A861.  Thus, even if Douglass did provide sufficient evidence to swear behind the QuickenInsurance article, the Board's decision can and should still be affirmed based on the Insuremarket website alone.

During prosecution, an applicant may submit a declaration pursuant to 37 C.F.R. § 1.131 to establish an earlier date of invention and avoid a piece of prior art.  This process is known as "swearing back" or "swearing behind" a reference.  <u>See, e.g.</u>, Manual of Patent Examining Procedure § 715.  "Under § 1.131, the party

24

may remove his invention from the purview of the prior art reference by providing facts 'in character and weight' that demonstrate 'conception of the invention prior to the effective date of the reference coupled with due diligence.'" In re Enhanced Sec. Research, LLC, 739 F.3d 1347, 1358 (Fed. Cir. 2014) (quoting 37 C.F.R. § 1.131(b) (2012)).

Substantial evidence supports the Board's findings that Douglass failed to demonstrate either earlier conception or diligence in his reduction to practice. Douglass's only proof of conception is that the figures submitted with his declaration mirrored the figures in the patent application. As the Examiner pointed out, however, despite repeated requests Douglass never explained where each and every limitation in the claimed invention was disclosed by these figures. A878-79. Even on appeal Douglass refuses to identify any particular part of the figures which disclose the limitations of the invention as claimed. See Douglass Br. 20-21 (citing to figures generally). Without demonstrating possession of the invention as claimed, including all limitations, Douglass cannot prove prior conception. See Singh v. Brake, 317 F.3d 1334, 1340 (Fed. Cir. 2003) ("A conception must encompass all limitations of the claimed invention . . . .")

Likewise, the Examiner found that Douglass failed to account for the time between conception and reduction to practice. A877-78. Instead, the Examiner

found, Douglass was attempting to commercialize his invention.  A878.  While

Douglass claims this was the only way to reduce the invention to practice, it is

telling that the invention was ultimately reduced to practice as a patent application

and not as a commercial system.  Moreover, Douglass did not submit sufficient

materials to demonstrate that his attorney's constructive reduction to practice

proceeded with diligence.  See, e.g., Enhanced Sec., 739 F.3d at 1358

(Demonstration of attorney diligence towards constructive reduction to practice

requires records showing the exact days when activity related to the application

occurred.).

## C.    Substantial evidence supports the Board's findings that claims 19-38 lack written description support

If the Court concludes that the limitation "a communication indicating that

said insurance service required by said client will be provided with coverage

commencing at the time of the communication" is not entitled to patentable weight,

and that the Board otherwise correctly held the claims are obvious in view of the

prior art, it need not reach the written description issue.[6]  If this limitation is

entitled to patentable weight, the Examiner found – and the Board affirmed – that

---

6.    As indicated above, claims 39 and 40 do not include this limitation. As such, the Court should affirm these two claims as obvious even if it concluded the limitation was entitled to patentable weight.

26

there is no written description support for a communication indicating that coverage will commence at the time of the communication. Rather, Douglass's specification is silent as to when coverage must begin.

This limitation appears in claims 19-38; only claims 39 and 40, added late in the prosecution, lack this limitation. Whether there is written description support is a question of fact that is reviewed for substantial evidence. In re Bimeda Research & Dev. Ltd., 724 F.3d 1320, 1323 (Fed. Cir. 2013). The Board's decision that there is insufficient written description support for the "with coverage commencing at the time of the communication" limitation is supported by substantial evidence.

The Board found there is no explicit disclosure in the '507 application indicating that the inventor contemplated the insurance policy would commence at the time of the communication. A6. On appeal, Douglass does not materially dispute this finding, and does not point to any part of the specification that explicitly discloses this limitation. Instead, Douglass argues generally that the limitation was disclosed in Figures 1 and 3 of the application, without pointing to any particular part of these figures or any other portion of the disclosure as originally filed. Douglass Br. 42. Douglass argues that "[i]t is a normal action as part of the purchase process to indicate when one wants insurance coverage to

27

commence." Douglass Br. 51. Douglass then asserts that because the exchange of communications could be carried out in a single session using, e.g., the Internet, this means one skilled in the art would necessarily understand that the content of one of those communications would be that the insurance coverage begins at the time of the communication. Douglass Br. 55.

The Board rejected this very argument because it correctly concluded that having a series of communications in real time does not necessarily require the communications to indicate that insurance coverage will be effective at the time of the communication. A7. Even Douglass admits that the limitation is not inherent, explaining that typically it is "part of the purchase process to indicate when one wants insurance coverage to commence." Douglass Br. 51. At best, Douglass is arguing that it is obvious to have "a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication." A description which renders a limitation obvious, however, is not enough to provide written description support. Ariad Pharms., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1352 (Fed. Cir. 2010) (en banc); see also Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1572 (Fed. Cir. 1997).

Douglass tries to side-step the written description issue by asserting that claims 39 and 40 are "the same process as Claims 19 and 29 using slightly

different wording." Douglass Br. 43, 46. Douglass is wrong that the absence of a written description rejection for claims 39 and 40 necessarily means the rejection is inappropriate for the remainder of the claims. Claims 39 and 40 do not contain the "with coverage commencing at the time of the communication" limitation. Compare claim 19 (A779) with claims 39 & 40 (A783-84). The fact that these claims require "real time" transactions and involve "transmitting . . . a policy of insurance," A783, says nothing about a communication indicating when the insurance policy starts.

Finally, Douglass's argument that the nature of an Internet-based transaction makes it inherent that the policy start immediately, Douglass Br. 53-56, is unsupported by either intrinsic or extrinsic factual evidence. It may very well be true that the Internet allows near instantaneous transactions and communications, but it does not follow that the transaction disclosed in the '507 application is necessarily effective immediately simply because it is sold via the Internet. Indeed, according to Douglass, other insurance policies sold via the Internet were not conveyed "with coverage commencing at the time of the communication." See, e.g., Douglass Br. 52 (discussing website with coverage commencing after midnight of the following business day).

29

As discussed above, Douglass seeks to distinguish his invention from the prior art based on the unsupported "coverage commencing at the time of the communication" limitation.  While a written description rejection is often applied when an applicant attempts to claim an invention too broadly, it is equally relevant when an applicant appends unsupported limitations in an attempt to distinguish an obvious invention from the prior art.  Douglass must claim the invention he disclosed.  He cannot avoid the prior art – and create a new invention – by adding new, unsupported limitations after the fact.  Because substantial evidence supports the Board's conclusion, the rejection of claims 19-38 for lack of written description should be affirmed.

## D.    The '507 application is not directed to patentable subject matter under 35 U.S.C. § 101

The Director believes that both the section 103 and section 112 rejections in this case are sound.  The Director additionally notes that while this appeal was pending, the Supreme Court issued its decision in Alice Corp. v. CLS Bank International, 134 S. Ct. 2347 (2014), which clarified the scope of patentable subject matter under 35 U.S.C. § 101.  Post-Alice, it is clear that appending a limitation like the use of a computer-mediated electronic communication network

onto an otherwise abstract process does not transform the abstract process into patentable subject matter.

In fact, <u>Alice</u> addressed claims analogous to those on appeal in this case. In <u>Alice</u>, the claims were directed to a transaction between parties involving an "intermediate settlement." 134 S.Ct. at 2356. The Supreme Court held these were abstract ideas, notwithstanding the claims' requirement of "computer implementation." <u>Id.</u> at 2357. The Court explained: "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." <u>Id.</u> at 2358. If the claims "simply instruct the practitioner to implement the abstract idea . . . on a generic computer," they do not make the claim patent eligible. <u>Id.</u> at 2359.

Here, the claims are very simple. They are directed to a process where a client communicates that they require insurance, and also sends an identifier to allow payment (e.g., a credit card number). In the second and final step the client receives a communication indicating that the insurance coverage will be provided. A779 (claim 19). These claims are directed to the abstract idea of using a series of communications to purchase a product, specifically an insurance policy. This is an abstract idea that is not meaningfully distinct from the abstract idea identified in <u>Alice</u>. <u>See, e.g.</u>, <u>Alice</u>, 134 S. Ct. at 2357 ("It is enough to recognize that there is

31

no meaningful distinction between the concept of risk hedging in <u>Bilski</u> and the concept of intermediated settlement at issue here.").  The fact that the sale is conducted via a "computer-mediated electronic communication network," which according to the application could be a telephone, is not enough to make it patent eligible.  134 S. Ct. at 2358.  The otherwise abstract claims do "no more than require a generic computer to perform generic computer functions," and therefore fall outside the scope of section 101.  <u>Id.</u> at 2359.

## V.    CONCLUSION

Substantial evidence supports the Board's decision that all of the claims on appeal are obvious in view of prior art, and the Board correctly applied the law to the question of obviousness.  Substantial evidence also supports the Board's decision that claims 19-38 lack written description support.  Finally, applying the Supreme Court's decision in <u>Alice</u>, none of the pending claims are directed to patentable subject matter.  For the foregoing reasons, the Board's decision should be affirmed.

Respectfully submitted,

August 11, 2014

/s/ Jeremiah S. Helm

NATHAN K. KELLEY
Solicitor

JEREMIAH S. HELM
JAMIE L. SIMPSON
Associate Solicitors

Mail Stop 8
P.O. Box 1450
Alexandria, VA  22313-1450
(571) 272-9035

*Attorneys for the Director of
  the United States Patent and
  Trademark Office*

33

### RULE 32(A)(7)(C) CERTIFICATE OF COMPLIANCE

I certify pursuant to Fed. R. App. Proc. 32(a)(7) that the foregoing BRIEF FOR APPELLEE - DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE complies with the type-volume limitation required by the Court's rule.  The total number of words in the foregoing brief, excluding table of contents and table of authorities, is 6,703 words as calculated using the Word® software program.


                /s/ Jeremiah S. Helm

                Jeremiah S. Helm

                Associate Solicitor

**CERTIFICATE OF SERVICE**

I certify that on August 11, 2014, I electronically filed the foregoing

BRIEF FOR APPELLEE – DIRECTOR OF THE UNITED STATES PATENT AND

TRADEMARK OFFICE using the Court's CM/ECF filing system, which

constitutes service, pursuant to Fed. R. App. P. 25(c), Fed. Cir. R. 25(a), and

the Court's Administrative Order Regarding Electronic Case Filing 6(A)

(May 17, 2012).

/s/Jeremiah S. Helm
Jeremiah S. Helm
Associate Solicitor
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
(571) 272-9035