**2014-1207**
**(Serial No. 09/527,507)**

# United States Court of Appeals
# for the Federal Circuit

## IN RE: ANDREW IAN DOUGLASS

---

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD.

---

**REPLY BRIEF OF APPELLANT ANDREW IAN DOUGLASS**

---

John T. Harding
MORRISON MAHONEY LLP
250 Summer Street
Boston, Massachusetts  02210
Telephone:  (617) 439-7558
Facsimile:  (617) 342-4888
jharding@morrisonmahoney.com

Joseph B. Milstein
MILSTEIN ZHANG & WU LLC
2000 Commonwealth Avenue, Suite 400
Newton, MA 02466-2004
Telephone:  (617) 860-2800
Facsimile:  (888) 521-1672
joseph.milstein@mzwiplaw.com

Dated:  October 30, 2014

# TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

Introduction ........................................................................................... 1

Argument ............................................................................................... 4

    I.    THE PTO FUNDAMENTALLY MISUNDERSTOOD
        THE INVENTION ...................................................................... 4

        A.  The Invention Is Not One for Obtaining Insurance Quotes ................... 4

        B.  The Procedural History Confirms the PTO's Error ............................. 6

        C.  The Examiner Failed to Consider the Rebuttal Evidence ...................... 9

        D.  The Examiner Failed to Consider Amendments to the Claim .............. 12

    II.    THE PRIOR ART DOES NOT SUPPORT THE PTO'S
        REJECTION OF THE PATENT APPLICATION ..................................... 17

    III.  THERE IS NO BASIS FOR THE PTO'S BELATED SUGGESTION
        THAT THE INVENTION IS NOT "PATENTABLE" .............................. 23

Conclusion and Statement of Relief Sought ........................................... 26

Certificate of Service ............................................................................ 28

Certificate of Compliance ..................................................................... 29

1494850v1

# TABLE OF AUTHORITIES

## Cases

*Alice Corp. v. CLS Bank Int'l*, __ U.S. __, 134 S. Ct. 2347 (2014) ...................24, 25

*Dickinson v. Zurko*, 527 U.S. 150 (1999) ...............................................................3, 8

*Gould v. Quigg*, 822 F.2d 1074 (Fed. Cir. 1987)....................................................26

*In re Beasley*, 117 Fed. Appx. 739, 2004 WL 2793170 (Fed. Cir. 2004) ... 4, 8-9, 23

*In re Eli Lilly & Co.*, 902 F.2d 943 (Fed. Cir. 1990)...............................................10

*In re Oggero*, 215 F.3d 1347, 1999 WL 600407 (Fed. Cir. 1999) ........................ 8-9

*In re Piasecki*, 745 F.2d 1468 (Fed. Cir. 1984) ...................................................9, 10

*In re Raymond*, 835 F.2d 872, 1987 WL 4683 (Fed. Cir. 1987) ...........................23

*In re Sang Su Lee*, 277 F.3d 1338 (Fed. Cir. 2002).................................................24

*In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004)..................................................24

*In re Wilson*, 424 F.2d 1382 (CCPA 1970) .............................................................13

*In re Yates*, 663 F.2d 1054 (CCPA 1981)................................................................10

*Randall Mfg. v. Rea*, 733 F.3d 1355 (Fed. Cir. 2013) ........................................ 3, 8-9

*Securities & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947) ....................24


## Other Authorities

Manual of Patent Examining Procedure §2142 .................................................... 9-10

Manual of Patent Examining Procedure §2143.03 ...................................................13

1494850v1

# INTRODUCTION

The Examiner, the Patent Trial and Appeal Board (the "PTAB") and now the Director of the PTO (collectively, the "PTO") each committed the same basic error in concluding that the Invention claimed by Mr. Douglass is not entitled to a patent. That error is a simple one, but one that is fatal to the PTO's position: the PTO either misunderstood or intentionally ignored the true nature of Mr. Douglass' Invention. The Invention is not one where a broker or other intermediary obtains preliminary quotes from multiple insurance companies and at some other time facilitates a subsequent transaction by which a policy may be issued a different entity. The Invention is directed to a process by which an "insurance issuing entity" (an actual insurance company) accepts the risk of loss and then issues and delivers an actual policy of insurance to the consumer in a single session in real time using a computer-mediated system.

The PTO compounded its error by attempting to support its assertion that the Invention was "obvious" under 35 U.S.C. §103 based upon claimed "prior art" that is not analogous to the Invention. The PTO even went so far as to materially distort the primary prior art reference (InsureMarket) upon which it relied, including by taking words out of context and reading information into the reference that is not there. When confronted with rebuttal evidence that conclusively demonstrated that the InsureMarket prior art reference did not support

1

its position, the PTO ignored the additional evidence altogether. ***No mention of the rebuttal evidence is contained in the Examiner's subsequent Office Actions or in the PTAB's Decision***. These repeated, arbitrary and capricious procedural wrongs – created by turning a blind eye to the Invention that is actually claimed and the evidence that supports it – must be redressed by the Court.

In addition to the procedural errors, the PTO is just plain wrong on the substance. The clear and explicit language of Claims 39 and 40 demonstrates why the PTO's position is erroneous. Claim 39 clearly states that, at the conclusion of the contemplated session via the internet, a communication is transmitted from the insurance entity "***comprising a policy of insurance required by said client***." [A.681 (emphasis added)]. An actual policy of insurance – not a quote – is put into the hands of the consumer at the end of the session. Claim 40 makes it clear that the process described in the Invention is one "by which ***an insurance issuing entity*** sells insurance to a client" and reiterates that the communication is one "***comprising a policy of insurance***" [A.681-682 (emphasis added)]. These claims make it clear that the contemplated transaction is one between a consumer and a licensed, admitted insurance company to which the risk of loss is transferred in real time during the course of the transaction. The consumer who engages in a transaction using the Invention receives an insurance policy that is in full force and effect at the conclusion of the session.

2

The prior art relied upon by the Examiner and the PTAB does not teach such a process. The process of the Invention is fundamentally different than the system for obtaining insurance quotes using a broker that is described in the prior art relied upon by the PTO. It is hornbook law that an insurance company is not "bound" until a customer receives a writing from the insurer indicating that the insurer is so bound, regardless of how many quotes it issues to potential customers on a marketplace website. None of the prior art references describe, or even suggest, the transaction that is fully and completely described in the Invention. This fundamental distinction renders the prior art relied upon by the PTO wholly inapposite to the Invention. The prior art is not analogous. Accordingly, the actions and decisions of the Examiner and the PTAB were arbitrary and capricious, unsupported by substantial evidence and legally erroneous. *Dickinson v. Zurko*, 527 U.S. 150 (1999)(PTO is an agency subject to the Administrative Procedure Act, 5 U.S.C. §706, including the "substantial evidence" and "arbitrary and capricious standards"); *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013)("whether a claimed invention should have been obvious is a question of law, based on factual determinations regarding the scope and extent of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness. On appeal, we review the Board's compliance with the governing legal standards *de novo* and its

3

underlying factual determinations for substantial evidence"); *In re Beasley*, 117 Fed. Appx. 739, 2004 WL 2793170 (Fed. Cir. 2004)(reversing rejection of patent on the grounds of obviousness where PTAB decision was based on conclusory assertions not supported by the record).

The appropriate remedy is for the Court to reverse and vacate the PTAB's Decision so that a patent for the Invention may be issued by the PTO forthwith.[1]

## ARGUMENT

## I.      THE PTO FUNDAMENTALLY MISUNDERSTOOD THE INVENTION

### A.      The Invention Is Not One for Obtaining Insurance Quotes

The fundamental error committed by the PTO—and the reason why its Decision must be reversed—is that the PTO erroneously construed the Invention as one by which a consumer obtains insurance quotes using the services of a broker or other intermediary over the internet.  That is not the process described in the Invention at all.  The Invention is one where the consumer interacts directly with an insurance company and obtains an actual insurance policy in real time at the conclusion of the session.  At that point in time, the risk of loss has been

---

[1] Mr. Douglass has spent a substantial portion of his career in the insurance industry, including as the General Counsel of one of the ten largest property and casualty insurers in the United States.  Mr. Douglass is a graduate of the United States Naval Academy and holds a J.D. and M.B.A. from Stanford University.

4

transferred from the consumer to the insurance company and a legal contract has been entered into that defines the terms of the relationship between the parties.

The Invention is completely different from a process where a consumer obtains preliminary insurance quotes by means of an internet marketplace from an entity that does not actually issue any policy that may result; where no risk of loss is transferred from the consumer to an insurance company during the course of the session; and where no complete contract is delivered at the end of the session. Such a system for obtaining insurance quotes using the services of an intermediary is the only process described in the InsureMarket material which became the lynchpin for the PTO's conclusion that Mr. Douglass' Invention is obvious. The Examiner and the PTAB consistently ignored this critical difference between the Invention and the prior art and never cogently explained why, thereby violating the rules of the Manual of Patent Examining Procedures ("MPEP"). The decisions of the Examiner and the PTAB are devoid of any discussion of the basic concept that is at the core of the Invention. This misunderstanding or deliberate disregard of the fundamental nature of the Invention created the erroneous analysis used to support rejection of the Invention. The Decision must be overturned as arbitrary, capricious and unsupported by the evidence.

1494850v1

## B.    The Procedural History Confirms the PTO's Error

The torturous history of Office Actions by the Examiner confirms the fundamental error that the PTO committed in the examination process. From the outset, the Examiner determined that there was no meaningful distinction between the Invention and the process described in the InsureMarket reference. The Examiner reached this conclusion even though InsureMarket is not an insurance company. This erroneous conclusion was then simply repeated over the course of all ensuing orders that stretched out for many years. The PTO completely disregarded the arguments and additional evidence presented by Mr. Douglass, as well as the amendments to the Claims that were made. The Office Action dated February 10, 2006 states:

> Claims 19-21 are rejected under 35 U.S.C. 103(a) as being unpatentable over Insuremarket (Insuremarket by Quicken, www.insuremarket.com. accessed at www.archive.org, 12/12/1998-1/27/1999) in view of QuickenInsurance article ("QuickenInsurance makes comparison and choices easier with new quotes summary redesign," Business Editors and Insurance writers, Business Wire, 12/29/1999).

[A.376]. The Examiner reached the same conclusion for the same reason with respect to Claims 29 and 31-38. [A.383, 389, 391].

The Examiner offered the following stated rationale for rejecting Claim 19 and then incorporated that rationale in rejecting Claim 29:

6

As per the recitation of a "single communication session," it is respectfully submitted that the steps on page 6 of the InsuranceMarket article can be done in "a single communication session" because a user is able to fill out a policy needs questionnaire and then purchase an insurance policy, or the steps allow a user to save information in a centralized location (pg. 6, par. 1-8). *InsuranceMarket does not explicitly recite a "single communication session." Thus, the Examiner has provide[d] the QuickenInsurance article that discloses that "with a single click" and "instantly" consumers can receive up to seven quote-estimates from different carriers with the option to purchase from the carriers online* (pg. 1 par. 2, pg. 2 par. 1). At the time the invention was made, it would have been obvious to one of ordinary skill in the art to include the features of the QuickenInsurance article within the method of InsuranceMarket with the motivation of reducing the time needed to purchase an insurance policy by providing the ability to receive quotes and purchase policies instantly and "with a single click" (see QuickenInsurance article, pg. 1 par. 2, pg. 2 par. 3).[2]

[A.378 (emphasis added)].

This rationale was incorporated by reference in all of the subsequent Office Actions that were issued during the period from August 18, 2006 to August 3, 2009. [A.450-459, 666-671, 702-707, 795-801, 860-866]. The same reasoning was used after the application was amended to include Claims 39 and 40 and after Mr. Douglass submitted rebuttal evidence relating to the InsureMarket reference in response to the February 6, 2006 Office Action. Once the Examiner adopted this

---

[2] The way in which the Examiner distorted the actual contents of the InsureMarket reference and the QuickenInsurance article is set forth in Section II below.

7

rationale, she became wedded to it and did not consider either the ways in which the claims were amended or the additional rebuttal evidence presented by Mr. Douglass to refute the Examiner's conclusion. The Examiner referred to the conclusion reached in the original February 2006 Office Action throughout the course of the proceedings despite the evolving nature of the claims and evidence presented by Mr. Douglass. [*See* Office Actions dated August 18, 2006, April 5, 2007 and October 18, 2007; A.450-459, 666-671, 702-707]. No meaningful consideration of the evolving nature of the claim and the additional evidence submitted that refuted the Examiner's position was ever undertaken.

Completely absent from the Examiner's rationale is the recognition that the Invention was for a process by which a consumer and an actual insurance company (not a broker or intermediary) would engage in a transaction whereby an actual insurance policy was issued at the conclusion of the session. This fundamental concept of the Invention is not discussed anywhere in the Examiner's Office Actions or the subsequent Decision of the PTAB. [A.1-18]. The only conclusion that the Court can reach is that the PTO's decision to deny a patent was based upon a complete misunderstanding or intentional disregard of the nature of the Invention. The Decision was not supported by substantial evidence, was arbitrary and capricious, and legally erroneous. *See Zurko*, 527 U.S. at 164; *Randall Mfg.*,

8

733 F.3d at 1362; *Beasley*, 2004 WL 2793170, *5; *In re Oggero*, 215 F.3d 1347, 1999 WL 600407, *1 (Fed. Cir. 1999)(arbitrary and capricious standard applies).

## C.   The Examiner Failed to Consider the Rebuttal Evidence

The record in this case establishes that the PTO utterly failed to follow its own rules and settled precedents of this Court by failing to give any consideration to the rebuttal evidence relating to the InsureMarket reference that was submitted on May 3, 2006. The PTO's blatant disregard of the rebuttal evidence is clearly improper. This Court has long held that when rebuttal evidence is submitted, the analytical process must start afresh:

> If rebuttal evidence of adequate weight is produced, the holding of *prima facie* obviousness, being but a legal inference from previously uncontradicted evidence, is dissipated. ***Regardless of whether the prima facie case could have been characterized as strong or weak, the examiner must consider all of the evidence anew.***

*In re Piasecki*, 745 F.2d 1468, 1482 (Fed. Cir. 1984)(emphasis added). This is a mandatory procedure that must be followed; it is not optional with the PTO whether to do so. It is clear from the record that the PTO did not adhere to this mandate.

The PTO's disregard of the rebuttal evidence submitted by Mr. Douglass contravened MPEP §2142, which provides:

> When an applicant submits evidence, whether in the specification as originally filed or in reply to a rejection, ***the examiner must reconsider the patentability of the***

9

> *claimed invention. The decision on patentability must be made based upon consideration of all the evidence, including the evidence submitted by the examiner and the evidence submitted by the applicant.* A decision to make or maintain a rejection in the face of all the evidence must show that it was based on the totality of the evidence. Facts established by rebuttal evidence must be evaluated along with the facts on which the conclusion of obviousness was reached, not against the conclusion itself. *In re Eli Lilly & Co.*, 902 F.2d 943, 14 USPQ2d 1741 (Fed. Cir. 1990).

*See In re Piasecki,* 745 F.2d at 1473 (Fed. Cir. 1984) (additional facts presented in rebuttal must be considered with no deference given to the earlier decision); *In re Yates,* 663 F.2d 1054, 1057 (CCPA 1981)("[i]f the PTO considers…that there is any explicit or implicit teaching or suggestion in any prior art of such a [limitation in a claim], it must produce supporting references. In the face of appellant's evidence, mere allegations of obviousness are not enough").

The record is clear that this procedure was not followed. The arguments made by the Examiner in February 2006 are precisely the same as those made in the Examiner's Answer on appeal dated August 3, 2009 [A.860-876] even though Mr. Douglass' rebuttal evidence was submitted on May 3, 2006. [A.440-445]. *None of the decisions of the Examiner issued after May 3, 2006 reflect any consideration at all of the rebuttal evidence presented by Mr. Douglass concerning the InsureMarket reference*. The rebuttal evidence is never so much as mentioned by the Examiner or the PTAB. [A.1-18, 446-485, 662-675, 698-729,

10

853-888]. This failure to consider the evidence – in direct contravention of the MPEP and applicable judicial precedent – was arbitrary and capricious and completely undermines the conclusion of obviousness reached by the Examiner and affirmed by the PTAB.

As discussed in Section II below, the rebuttal evidence made it clear that the Examiner had misconstrued the InsureMarket reference because rebuttal information *from the very same source* (Intuit Insurance Services) showed that the InsureMarket reference *did not* stand for the proposition claimed by the Examiner. Rather than deal with the substance of the rebuttal evidence that Mr. Douglass presented, the Examiner's decisions do not reflect that she ever read the evidence and analyzed its significance, as mandated by both the MPEP and cases such as *Piasekci*. Instead, the Examiner simply clung to her original conclusion without analyzing the effect of the new evidence on the previously stated rationale. Likewise, the PTAB ignored the rebuttal evidence in its Decision.

The only response offered by the PTO is to claim that there was "no need" for the Examiner to consider the rebuttal evidence. [PTO Br. at 21, n.5]. But that is not what the MPEP and the decisions of this Court require; they mandate that the Examiner start afresh, "consider all of the evidence anew" and evaluate the new facts presented for their significance and not merely compare them to the original conclusion. The process has to start over so that the Examiner is not tainted by the

11

1494850v1

earlier determination. The record in this case is clear that the Examiner never made any effort to do so—the facts presented in the rebuttal evidence are never even mentioned in any later action or decision. [A.1-18, 446-485, 662-675, 698-729, 853-888]. The PTO's facile suggestion that there was "no need" to consider the evidence flies in the face of the PTO's own procedures as embodied in the MPEP and the decisions of the Court.

## D. The Examiner Failed to Consider Amendments to the Claim

In response to the Office Actions described above, on July 3, 2009, Mr. Douglass filed an amendment to his claims. The amendment added independent Claims 39 and 40 that clearly use different language than the other Claims. [A.676-697]. In its Brief, the PTO dismissively refers to Claims 39 and 40 as "late-added" [PTO Br. at 5, 27] and then never deals with the language and substance of these claims. Neither the Examiner nor the PTAB ever contended that these claims were untimely or comprised new matter that was outside the scope of the original application. The claims were added in a timely manner and were treated by the PTO as being a proper amendment to the original application. [*See* A.704-705].

These claims were summarily dismissed on the same grounds as original Claims 19 and 29 with no meaningful analysis of their language. The Examiner and the PTAB ignored the procedures of the MPEP which mandate that all of the

12

language of the claims under examination be considered.   As MPEP §2143.03 states:

> "All words in a claim must be considered in judging the patentability of that claim against the prior art." *In re Wilson*, 424 F.2d 1382, 1385, 165 USPQ 494, 496 (CCPA 1970).

Claim 39 added the express limitation that "(e) upon a determination in step (d) to provide said insurance service, transmitting from said portal a communication indicating that said insurance service required by said client will be provided, ***said communication comprising a policy of insurance.*** " [A.681 (emphasis added)].

Despite this language, Claim 39 was rejected as being duplicative of Claim 29. But as the chart below shows, the two claims are not the same (see (e) below).

| Claim 29 | Claim 39 |
|---|---|
| A process by which a vendor of an insurance service provides said service to a client, comprising the steps of: | A process by which a vendor of an insurance service provides said service to a client, comprising the steps of: |
| (a) providing a computer-mediated electronic communication portal configured to perform at least one of receiving information from a client and transmitting information to a client; | (a) providing a computer-mediated electronic communication portal configured to perform at least one of receiving information from a client and transmitting information to a client; |
| (b) receiving a communication at said portal of at least one of information that identifies an insurance service required by said client and an identifier suitable for making a payment for the account of said client; | (b) receiving a communication at said portal of at least one of information that identifies an insurance service required by said client and an identifier suitable for making a payment for the account of said client; |
| (c) communicating from said portal with at least one of an underwriting | (c) communicating from said portal with at least one of an underwriting |

1494850v1

| | |
|---|---|
| center and a financial institution having a relationship with said client; | center and a financial institution having a relationship with said client; |
| (d) determining whether to provide said insurance service required by said client, based at least in part on said communication with said at least one of an underwriting center and a financial institution having a relationship with said client; and | (d) determining whether to provide said insurance service required by said client, based at least in part on said communication with said at least one of an underwriting center and a financial institution having a relationship with said client; and |
| (e) upon a determination in step (d) to provide said insurance service, **transmitting from said portal a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication;** | (e) upon a determination in step (d) to provide said insurance service, **transmitting from said portal a communication comprising a policy of insurance required by said client;** |
| wherein steps (b) through (e) occur during a single communication session in real time. | Wherein steps (b) through (e) occur during a single communication session in real time. |

[A.679, 681, 684 (emphasis added)].

Further, to the extent that the Examiner concluded that the limitation contained in Claim 31 was the same as in Claim 39, the Examiner erred as Claim 31 does not expressly state that the communication transmitted at the end of the session constitutes the policy of insurance itself.[3] In short, the rationale offered by the Examiner and the PTAB never took into account the fact that the Invention was

---

[3] Claim 31 refers to issuing a policy of insurance according to said insurance service required by said client [A.679-680], but does not specify that the communication constitutes or comprises the policy of insurance, which is the critical language added in Claim 39.

14

for a system or process by which an actual policy of insurance would be delivered to the consumer by an insurance company in a real time transaction.

The Examiner and the PTAB never considered the significance of Claim 40, which specified that the other party to the transaction would be an "insuring issuing entity" [A.681, 684-685] and not a broker or intermediary that does not actually assume the risk of loss. This is a fundamental distinction between the Invention and the prior art that was steadfastly ignored by the Examiner and the PTAB. The Examiner and the PTAB erroneously concluded that Claim 40 simply repeated Claim 29 and therefore should be rejected on the same grounds. [A.15, 705]. As the chart below summarizes, that is not the case. Claim 40 expressly states that the transaction is between the consumer and an "insurance issuing entity" that actually sells and issues policies of insurance itself. [A.681].

| Claim 29 | Claim 40 |
|---|---|
| A process by which **a vendor of an insurance service** provides said service to a client, comprising the steps of: | A process by which **an insurance issuing entity** sells insurance to a client, comprising the steps of: |
| (a) **providing a computer-mediated electronic communication portal** configured to perform at least one of receiving information from a client and transmitting information to a client; | (a) **providing a computer-mediated electronic communication portal of an insurance issuing entity that sells insurance** configured to perform at least one of receiving information from a client and transmitting information to a client; |
| (b) receiving a communication at said portal of at least one of information that identifies an insurance service required by said client and an identifier suitable for making a | (b) receiving a communication at said portal of at least one of information that identifies an insurance service required by said client and an identifier suitable for making a |

15

| | |
|---|---|
| payment for the account of said client; | payment for the account of said client; |
| (c) communicating from said portal with at least one of an underwriting center and a financial institution having a relationship with said client; | (c) communicating from said portal with at least one of an underwriting center and a financial institution having a relationship with said client; |
| (d) determining whether to provide said insurance service required by said client, based at least in part on said communication with said at least one of an underwriting center and a financial institution having a relationship with said client; and | (d) determining whether to provide said insurance service required by said client, based at least in part on said communication with said at least one of an underwriting center and a financial institution having a relationship with said client; and |
| (e) upon a determination in step (d) to provide said insurance service, **transmitting from said portal a communication indicating that said insurance service required by said client will be provided with coverage commencing at the time of the communication;** | (e) upon a determination in step (d) to provide said insurance service, **transmitting from said portal a communication indicating that said insurance service required by said client will be provided, said communication comprising a policy of insurance;** |
| wherein steps (b) through (e) occur during a single communication session in real time. | Wherein steps (b) through (e) occur during a single communication session in real time. |

[A.679, 681-682].

What emerges from reviewing the extensive record in this case over a period of some fourteen years is that once the Examiner reached her initial conclusion in early 2006 that a patent should not issue, she never looked back. The subsequent Examiner who was assigned to examine the application accepted the analysis of the earlier Examiner verbatim, as did the PTAB, even after Mr. Douglass pointed out to each of them that rebuttal evidence was being ignored in contravention of the MPEP and the decisions of this Court. The express language of the

16

amendments to the Invention was disregarded. The conclusory rationale for the decision originally formulated in February 2006 was substantially repeated over and over again to reach the same result with no analysis of new facts, evidence or claims. It is difficult to conceive of more arbitrary and capricious action by an agent of the United States. This miscarriage of the examination process must be corrected by the Court.

## II.   THE PRIOR ART DOES NOT SUPPORT THE PTO'S REJECTION OF THE PATENT APPLICATION

The validity of the PTO's position rises and falls with its reliance upon the InsureMarket reference. The PTO concedes as much by stating in its Brief that "[t]he Examiner found that the Insuremarket website discloses all aspects of the claimed invention, other than explicitly stating that the insurance purchasing activity occurs in a single communication session." [PTO Br. at 17]. In rejecting Mr. Douglass' claim, the Examiner and the PTAB relied on only two documents identified as "InsureMarket by Quicken" [A.714-721] and the "QuickenInsurance article." [A.726-729]. The record reflects absolutely no consideration by the Examiner or the PTAB of the rebuttal evidence *from the same source* submitted by Mr. Douglass. [A.1-18, 446-485, 662-675, 698-729, 853-888].

There are several fundamental problems with the PTO's reliance upon the InsureMarket reference. There is nothing in these documents which in any way suggests that InsureMarket is an actual insurance company or any other form of

17

risk-bearing entity. InsureMarket admits that it is not an insurance company, but instead merely acts as a broker or intermediary. The InsureMarket system describes a process for obtaining quotes and providing a technological means by which the consumer can compare the quotes generated by the broker from several different sources. [A.443-444, 714-721, 726-729]. The rebuttal information that Mr. Douglass submitted from the same source underscores this point. [A.443-444]. There is no indication in the InsureMarket documents that the InsureMarket entity has any actual ability to make a decision to accept a transfer of a risk of loss and to issue a fully executed insurance policy in real time. InsureMarket uses a process to match customers with insurance companies, but is not itself an insurance company that can issue a policy. Mr. Douglass' Invention uses technology to solve the unmet need to facilitate direct transactions between the consumer and the entity that will ultimately pay any loss. This critical distinction renders the InsureMarket reference inapposite to the Invention. InsureMarket is *not* analogous prior art.[4]

The second error committed by the Examiner and the PTAB is that they distorted the prior art upon which they were relying. In its Brief, the PTO repeats the same textual (and contextual) error in an effort to make the prior art "fit" a

---

[4] Today, there are insurance companies that do sell insurance policies in a single communication session using the internet. *See e.g.*, GEICO.com. This process did not exist at the time the application for the Invention was filed in 2000. This is a classic secondary consideration of non-obviousness.

1494850v1

situation that it does not. [PTO Br. at 19-20]. The Examiner's argument was based almost entirely on taking one word—"instantly" [*sic* "instant"] and the phrase "with a single click" out of context. Read in the context in which these words appear in the prior art, the word and phrase relied upon by the Examiner do not have the meaning which has been ascribed to them.

The Insuremarket reference relied upon by the Examiner states:

> Intuit Insurance Services, Inc. (IIS), the providers of the QuickenInsurance service, the leading insurance marketplace and a wholly owned subsidiary of Intuit Inc. (NASDAQ: INTU), today announced a new auto insurance quotes summary-page layout that will give consumers visiting the site greater flexibility when searching for the most appropriate and economical policy suited for their needs. Over 90 percent of visitors to QuickenInsurance can now utilize this new convenience to search for the automotive insurance in their region.

> By completing the quick EasyQuote$^{SM}$ questionnaire, consumers can receive up to seven quote-estimates from different carriers with the option to purchase from some carriers online. **With a single click**, consumers can compare details of their quotes in a side-by-side summary, including company rating, vehicle to cover, policy offering and applicable discounts. A password-protected option to save the resulting information allows consumers to make a decision at their own pace, not requiring them to enter the same information each time they visit QuickenInsurance.

> Quicken InsureMarket to QuickenInsurance

> "Our new layout is the result of many consumer testing sessions in which we asked consumers to determine the most effective presentation format," said Steven Aldrich, President of IIS. "The new auto insurance quotes

19

summary-page and the ability to compare details allows consumers to see what they want to see. Now they can make the most informed and stress-free buying decision."

To further align Intuit's Insurance Services division with the rest of the Quicken family of online personal finance Web sites, the business name Quicken InsureMarket Service has changed to QuickenInsurance. QuickenInsurance.com (www.QuickenInsurance.com) continues to offer **instant** live insurance quotes from multiple providers, insurance information and tools to help calculate the right amount of coverage for each individual consumer's needs. Furthermore, consumers have the option to purchase auto policies directly online, a feature offered exclusively through QuickenInsurance.

[A.727 (emphasis added to words relied upon by the PTO)].

The cited passage makes it clear that all that the InsureMarket service provided was a means of ***obtaining and comparing insurance quotes*** through a broker or intermediary "with a single click" or "instantly". The InsureMarket reference ***does not teach*** a procedure for obtaining a complete insurance policy directly from an insurance company in such a transaction "with a single click" or "instantly". The only thing that the InsureMarket process allows a customer to do is to obtain an insurance quote in an "instant" or "with a single click." The terms "with a single click" and "instant" (the word "instantly" was interpolated by the Examiner) do not in any way suggest the limitation of ***"a communication comprising a policy of insurance,"*** which is a critical element of the Invention. The InsureMarket reference does not describe a process for obtaining an actual

20

policy of insurance directly from the "insurance issuing entity" that is at the heart of Mr. Douglass' Invention. The Examiner and the PTAB distorted the prior art reference to try to make it apply to a situation where it clearly does not.

The Examiner and the PTAB then disregarded the rebuttal evidence submitted by Mr. Douglass from the same source (Intuit Insurance Services) which made it clear that the prior art did not stand for the proposition being asserted. In response to the Office Action of February 10, 2006, Mr. Douglass submitted rebuttal evidence on May 3, 2006. This response included a document dated February 1998 entitled "Travelers Joins InsureMarket as First Provider of Online Auto Policies" [A.440-445 (the "February 1998 press release")]. The February 1998 press release was published by the same source as the other references on a date that fell between the dates of the InsureMarket webpage and the QuickenInsurance article. [A.443-444]. The February 1998 press release stated, in relevant part:

> The Travelers auto policies available online in much of Alabama will showcase the Quicken Insuremarket service's real-time capabilities.
>
> This includes interacting with an insurer's database to produce an individualized rate quote; verifying driving records with states while a transaction is being processed online; processing payment online; providing immediate notification to approved consumers *(when conditions set by each insurer are met); and enabling coverage to commence as soon as after midnight of the following business day.*

21

[A.443 (emphasis added)].

The February 1998 press release makes several things clear. First, it states that the services being provided through InsureMarket are those of a broker or an insurance intermediary only. Second, it explicitly states that the approval decision is made by others. The website expressly states that it is not that of an insurance issuing entity. The description makes it clear that no actual policy of insurance is being provided "with a single click" or "instantly." At most, the process reflects a system whereby a prospective insured may be notified that she has met certain criteria for a policy of insurance to be issued upon the completion of further action by the insurance company and that the commencement of coverage may begin "as soon as after midnight of the next business day". (The commencement of coverage could be as long as three calendar days after the session). That is not the delivery of a final and complete insurance policy in real time directly from the insurer.

No logical reading of the February 1998 press release supports the construction that an actual policy of insurance is being issued as part of the communication. By contrast, the Invention clearly states that a policy of insurance is delivered as part of the original transaction, as expressed by the words "comprising a policy of insurance." Mr. Douglass repeatedly called the language of the February 1998 press release to the attention of the Examiner and the PTAB. [A.412-445, 582-599, 630-646, 676-697, 731-788, 889-913]. At every turn, the

22

information and how it undermined the fundamental premise of the Examiner's decision was completely disregarded. [A.1-18, 698-729, 853-888].[5] The prior art cannot bear the gloss which has been placed upon it by the PTO. ***Since there was no prior art that supports a finding that the Invention was "obvious," the PTO's decision must be reversed***. *See In re Beasley*, 117 Fed.Appx. 739, 2004 WL 2793170 (Fed. Cir. 2004)(reversing determination that invention was obvious as unsupported by substantial evidence); *In re Raymond*, 835 F.2d 872, 1987 WL 4683 (Fed. Cir. 1987)(prior art did not support conclusion of obviousness).

## III. THERE IS NO BASIS FOR THE PTO'S BELATED SUGGESTION THAT THE INVENTION IS NOT "PATENTABLE"

In the more than fourteen years that it has taken Mr. Douglass' claim to wind its way through the PTO labyrinth and arrive at this Court, the PTO has never claimed that the subject matter of the Invention as recited in Claims 19-40 is not patentable under 35 U.S.C. §101. As regards Claims 19-40, none of the decisions of the Examiner ever raised this as an issue. [A.446-485, 662-675, 698-729]. The PTAB's review of the Examiner's decisions never questioned that the subject matter claimed by Mr. Douglass in Claims 19-40 was eligible for a patent. [A.1-

---

[5] While the Examiner and the PTAB cited to certain other prior art references in their decisions, these other references were always in combination with the InsureMarket and QuickenInsurance references. [A.4-5. 8-17]. Without the lynchpin of the InsureMarket and QuickenInsurance references, the other prior art has no significance to Mr. Douglass' Invention and does not support a conclusion of "obviousness".

18].  It is far too late in the day for the PTO to now suggest that there is an issue as to whether the subject matter of the Invention recited in Claims 19-40 can be patented.  [PTO Br. at 30-32].  *See In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004)(PTO is barred from raising new arguments on appeal to justify or support a decision of the PTAB); *In re Sang Su Lee*, 277 F.3d 1338, 1345-1346 (Fed. Cir. 2002), quoting *Securities & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947)("courts may not accept appellate counsel's *post hoc* rationalization for agency action" and noting that review of the agency's decision must be made on the grounds relied on by the agency so as to avoid depriving the aggrieved party of a fair opportunity to support its position).

The PTO's suggestion that the recent decision of the Supreme Court in *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014) fundamentally altered the framework for analyzing the scope of patentable subject matter under 35 U.S.C. §101 is entirely misplaced.  While the *Alice Corp.* case clarified certain aspects of the standard for determining whether a particular subject matter can be patented, 134 S. Ct. at 2355, the decision did not work any fundamental change in the law.  In fact, the Supreme Court reiterated its prior holdings – which are fully applicable here – that where a claimed invention **materially improves a particular technological process**, it is entitled to patent protection under 35 U.S.C. §101.  As the Supreme Court stated:

In *Diehr*, 450 U.S. 175, by contrast, we held that a computer-implemented process for curing rubber was patent eligible, but not because it involved a computer. The claim employed a "well-known" mathematical equation, but it used that equation in a process designed to solve a technological problem in "conventional industry practice." *Id.,* at 177, 178. The invention in *Diehr* used a "thermocouple" to record constant temperature measurements inside the rubber mold—something "the industry ha[d] not been able to obtain." *Id.,* at 178, and n. 3. The temperature measurements were then fed into a computer, which repeatedly recalculated the remaining cure time by using the mathematical equation. *Id.,* at 178–179. These additional steps, we recently explained, "transformed the process into an inventive application of the formula." *Mayo*, *supra*, at ___ (slip op., at 12). In other words, the claims in *Diehr* were patent eligible because they improved an existing technological process, not because they were implemented on a computer.

134 S. Ct. at 2358.

The Supreme Court's statement in *Alice Corp.* is directly applicable here. Mr. Douglass is not suggesting that his Invention is entitled to the protection of the Patent Act because it employs a computer. That is not the point of the Invention at all. Rather, in the words of the Supreme Court, the Invention *"improve[s] an existing technological process" by applying the technology available through the internet to address long felt but unresolved needs*. Specifically, the Invention provides a means by which a consumer can interact directly with an insurance issuing entity and, in the course of a single session in real time, transfer the risk of loss to the insurance company, enter into a binding contract for the transfer of the

25

risk of loss to the insurance company, and receive a fully executed policy of insurance. The Invention improves the technological process by creating a method for consumers and insurance companies to engage in a direct and complete transaction in a single session in real time. These critical distinctions set the Invention apart from the prior art references that were relied upon by the Examiner and the PTAB. The improved technological process described in the Invention is patentable under 35 U.S.C. §101 and the *Alice Corp.* decision does not teach otherwise.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons set forth above and in his opening Brief, Mr. Douglass respectfully requests that the Court reverse the Decision of the PTAB and issue a Judgment declaring that he is entitled to the grant of a Patent for the Invention, as more specifically described in Claims 19-40 of the Patent Application, together with the maximum allowable Patent Term Adjustment based upon the PTO's inordinate delays. In its Brief, the PTO does not contest the correctness of the relief requested. *Cf. Gould v. Quigg*, 822 F.2d 1074, 1079 (Fed. Cir. 1987)(noting that an adjudication in a civil action that the applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board, must authorize the Commissioner to issue such patent on compliance with the requirements of law). There is no reason for any further delay. The Decision

26

should be reversed and the PTO should issue a patent consistent with this Court's

mandate.

Respectfully submitted,
**ANDREW IAN DOUGLASS**
By his attorneys,

/s/ *John T. Harding*

_____
John T. Harding
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA  02210
Telephone:  (617) 439-7558
Facsimile:  (617) 342-4888
jharding@morrisonmahoney.com

/s/ *Joseph B. Milstein*

_____
Joseph B. Milstein
MILSTEIN ZHANG & WU LLC
2000 Commonwealth Ave., Suite 400
Newton, MA 02466-2004
Telephone:  (617) 860-2800
Facsimile:  (888) 521-1672
joseph.milstein@mzwiplaw.com

Dated:  October 30, 2014

1494850v1

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October 2014, I caused this Reply Brief of Appellant Andrew Ian Douglass to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Nathan K. Kelley, Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
Tel: (571) 272-9035
Fax: (571) 273-0373
nathan.kelley@uspto.gov

Jeremiah S. Helm, Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
Tel: (571) 272-9035
Fax: (571) 273-0373
jeremiah.helm@uspto.gov

Jamie L. Simpson, Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
Tel: (571) 272-9035
Fax: (571) 273-0373
jamie.simpson@uspto.gov

/s/ John T. Harding

_____
John T. Harding
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Telephone: (617) 439-7558
Facsimile: (617) 342-4888
jharding@morrisonmahoney.com

28

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 6,801 words, based on the "Word Count" feature of Microsoft Word, including footnotes.  Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Table of Contents and Table of Authorities.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word  in 14-point Times New Roman.

*/s/ John T. Harding*

John T. Harding
Counsel for Appellant

Dated:  October 30, 2014

1494850v1